Sigrid R. CLINE, Appellant,

v.

Louis W. SULLIVAN, Appellee.

No. 90–1570SI.

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1991.

Decided July 19, 1991.

Paul A. Zoss, Des Moines, Iowa, for appellant.

Richard L. Richards, argued (Gene W. Shepard, on brief), Des Moines, Iowa, for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BATTEY,* District Judge.

BATTEY, District Judge.

Appellant Sigrid R. Cline appeals from the judgment of the district court affirming the decision of the Secretary of Health and Human Services (Secretary) denying her claim for disability benefits. Because the

---

* The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota, sitting by designation.

Secretary's denial is not supported by substantial evidence, we reverse.

## I. INTRODUCTION

At issue in this appeal is the question of whether the district court erred in affirming the administrative law judge's (ALJ) decision to deny appellant supplemental security income (SSI) benefits for the period of October 1986 to November 1988. Appellant filed her first application for SSI benefits on October 14, 1986. An administrative hearing was held almost one year later on October 1, 1987. A Notice of Decision denying appellant's application was filed November 30, 1987, which decision appellant appealed to the Appeals Council and to the district court upon rejection of the appeal by the Appeals Council. While appellant's action was still pending in the district court, appellant filed a second SSI application on November 28, 1988, and was awarded benefits as of that date based upon appellant's advanced age and new evidence indicating a deterioration in her condition. This appeal thus concerns only the two-year period from the time of appellant's initial application to the period when plaintiff was awarded benefits in November of 1988.

At the time appellant filed her initial claim in October of 1986 she was 48 years old. She has a high school education and has worked as a waitress and a rooming house manager in recent years. Appellant first experienced depression and back pain in the 1970s. X-rays taken in 1979 showed total disintegration of her right hip joint. Appellant underwent a total hip replacement in January of 1980.

Appellant obtained no significant medical treatment again until 1985 when Dr. W.C. Dannenmaier examined appellant for hand numbness and pain in the groin, right leg, elbows, feet, and left wrist. Dr. Dannenmaier concluded that appellant had excellent range of motion without pain in the hips, that the pain in appellant's right foot was caused by Morton's neuroma, and appellant's wrist pain was possible carpal tunnel syndrome and/or ulnar nerve compression. X-ray examination of the right hip showed a loosened line in the artificial hip. Dr. Dannenmaier recommended use of a splint on the wrist, flat and softly padded footwear, and use of a cane to decrease weight bearing on appellant's hip as much as possible.

Dr. Kevin Crowley first examined appellant in 1986. In his medical report Dr. Crowley expressed the opinion that appellant suffered from severe degenerative arthritis with right hip replacement and hypertension. Appellant was regularly taking Diazide and Aldomat for hypertension, and Centrax, Nalfon, and Tagomet on an as-needed basis to control nervousness, inflammation, and a peptic ulcer.

In November of 1986, Dr. Gary DeVoss conducted a social security disability examination of appellant. Dr. DeVoss reported that appellant complained of pain in her hands, elbows, knees, and feet and noted that her range of motion was normal and her grip strength fairly good. X-rays of the right hip showed minimal dystrophic calcification superiorly over the greater trochanter. Dr. DeVoss diagnosed a history of osteoarthritis, moderately symptomatic with minimal destructive changes noted, history of total right hip replacement with mild residual dysfunction, and hypertension under good control.

Upon referral by Dr. Crowley, appellant was seen in the general medicine clinic at the University of Iowa in February of 1987. Dr. Mark Armstrong evaluated appellant for chronic pain in her hands, elbows, knees, and feet, and for left chest and shoulder pain with shortness of breath. Dr. Armstrong reported that appellant has an active arthritic process versus fibrositis with tender points and probable carpal tunnel syndrome. Dr. Armstrong noted that appellant had a history of active inflammation and laboratory results were within normal limits.

Dr. Stanley Naides examined appellant in the rheumatology clinic at the University of Iowa in March of 1987. Dr. Naides noted that appellant reported no improvement, and continued to complain of hand numbness, and a constant, dull, aching pain in her entire body, worse in the feet,

wrists, and hands. Laboratory results were normal and the general physical examination, as well as X-rays of the chest, left elbow, and shoulder were unremarkable. Dr. Naides reported "no evidence of active arthritis" or "rheumatological disorder at present." Dr. Naides increased appellant's Clinoril dosage to control inflammation and ordered additional laboratory tests as well as hand, hip, and pelvic X-rays. Dr. Naides also recommended an evaluation by the neurology team. In an addendum to his report, Dr. Naides indicated that the hip X-ray indicated a possible loosening of the hip prosthesis and that an orthopedic consultation had been requested. The report of appellant's March 1987 neurological examination indicated that she complained of chronic pain occurring daily. No evidence or peripheral neuropathy was found, but Amitriptyline was prescribed for pain and headache.

In May of 1987 appellant was examined by Dr. C.R. Clark in the orthopedics clinic. Dr. Clark reported that appellant had a two centimeter leg length discrepancy, but had excellent full range of motion and absence of pain in her right hip. Review of X-rays showed loosening of the acetabular component of the hip prosthesis with no actual migration and relative good preservation of the joint space. Dr. Clark noted that the hip did not appear to be particularly symptomatic (indicative of a disease) and recommended a one-year follow-up visit.

Dr. Naides reported to the State of Iowa Department of Human Services in June of 1987 the results of appellant's examinations at the University of Iowa. Dr. Naides stated that nerve conduction studies, electromyograms, and X-rays of appellant's chest, left elbow, left shoulder, hands, left hip, and pelvis were all normal, thus ruling out a diagnosis of carpal tunnel syndrome, and that appellant's most likely diagnosis is fibromyalgia—pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues. Fibromyalgia often leads to a distinct sleep derangement which contributes to a general cycle of daytime fatigue and pain. Dr. Naides indicated that appellant was under supervision and

that it would be difficult to predict the expected duration of her condition. Dr. Naides also stated that while a diagnosis of fibromyalgia does not usually result in total incapacitation, the patient's subjective perceptions of her pain and discomfort could limit her work capacity.

## II. THE ADMINISTRATIVE HEARING

Appellant was the only witness to testify at the administrative hearing. According to her testimony, appellant had been employed in a restaurant part-time as a waitress/hostess showing guests to tables and acting as a cashier. This employment earned appellant $450–$500 per month. On the job, appellant sometimes carried two to three dishes at a time and poured coffee, but she used a steel wrist support to balance the items so that her wrist would not give out. She also testified that many times she fell while working and that her supervisor did not require her to do hard physical work. Appellant further testified that she could stand without moving for up to a half-hour, could sit comfortably for a long period only if she could put up her feet, and could drag, but not lift, a gallon container.

When not at work, appellant and her husband, who is totally disabled and unable to work, spend their days at home talking, taking short walks, watching television, and reading. They do not socialize, or attend movies or church. Appellant drives a car daily or every other day to the grocery store, located eight blocks from her home, but must use both feet to apply the brakes. She can carry a sack of groceries if they are not too heavy, and she must pull, rather than push, her grocery cart. Appellant can cook one light meal a day, but uses small kitchen appliances with pain. Her husband washes her hair because appellant can not raise her arms to apply pressure. Appellant testified that her joints swell if she stands too long, and that she tries to relieve pain by alternately moving and sitting.

In her testimony, appellant stated that her whole body hurt, particularly the joints in her hands and feet, that the bones are

constantly aching, and that she felt numbness in the last two fingers on both hands. She also testified that her pain had increased in the previous two years, that she could not remember a moment free of pain, and that doctors had told her that the pain would get worse in the future. Appellant testified that her feet hurt very much after sitting for 50 minutes at the administrative hearing.

Finally, appellant testified that she took daily doses of numerous prescription medications for relief from headaches, hypertension, and muscle inflammation. Appellant also testified that she did not take prescribed pain medication or Tylenol and that she is allergic to aspirin. Appellant testified that she is pain-free only in deep sleep because she is heavily medicated by the time she goes to bed.

The ALJ found that appellant suffered from possible fibromyalgia manifested by pain involving multiple joints and some instability in her right leg as a result of the loosening of the hip prosthesis. After reviewing the objective medical findings of the examining physicians, the ALJ found that appellant's musculoskeletal impairments concerned primarily the looseness of her right hip prosthesis which prevented her from performing occupations requiring moderate to heavy lifting and carrying, excessive walking, or prolonged standing or climbing. In view of these limitations, the ALJ concluded that appellant could not return to her past relevant work as a hostess.

Acknowledging that the burden had thus shifted to the Secretary to demonstrate that there were jobs in the national economy which appellant could perform, the ALJ determined that appellant was an individual of "younger age" and that she retained the residual functional capacity to do sedentary work. The ALJ noted that the record contained no evidence of any emotional impairment or combination of impairments that would significantly affect appellant's ability to perform sedentary work.

The ALJ discredited appellant's complaints of pain based upon her testimony regarding her ability to function, her description of her daily activities, her part-time work as a waitress, the clinical and laboratory findings, the asymptomatic nature of her hip prosthesis, her "spotty" work record, and the ALJ's personal observations of appellant at the hearing. The ALJ concluded that the appellant's nonexertional impairments would not have a significant impact on her ability to sustain attention, tolerate work pressures, achieve production goals, perform quality work, maintain a regular schedule, or otherwise interfere with appellant's ability to perform the full range of work at the sedentary level. Having discredited appellant's allegations of pain, the ALJ applied the medical-vocational guidelines, which directed a finding that appellant was not disabled, and denied benefits.

## III.  DISCUSSION

■ The decision of the ALJ must be upheld if it is supported by substantial evidence in the record as a whole. *Hutsell v. Sullivan*, 892 F.2d 747, 748–49 (8th Cir. 1989). The review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Secretary's decision, we also take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). In the case before us, the record reflects evidence in support of the ALJ's decision, but our examination turns up more evidence which detracts from the Secretary's decision than may be fairly said to support it.

■ The ALJ recognized that appellant's exertional impairments prevented her from returning to her work as a hostess. The burden of proof then shifted to the Secretary to prove that jobs existed in the national economy which appellant could perform. *Edwards v. Secretary of H.H.S.*, 809 F.2d 506 (8th Cir.1987). The ALJ, having discredited appellant's complaints of pain, applied the medical-vocational guidelines to fulfill the Secretary's burden of proof, *Carlock v. Sullivan*, 902 F.2d 1341 (8th Cir.1990), and directed a finding of not disabled. It is well-established law in the circuit that the medical-vocational guide-

lines may not be utilized to fulfill the Secretary's burden of proof where a claimant suffers from nonexertional impairments such as pain. If a claimant has exertional and nonexertional impairments, the ALJ should call a vocational expert, *Thompson v. Bowen*, 850 F.2d 346 (8th Cir.1988), but if a claimant's subjective allegations of pain are appropriately discredited for legally sufficient reasons, such as inconsistencies in the record evidence, the ALJ may employ the guidelines to direct a determination of not-disabled. *Prince v. Bowen*, 894 F.2d 283 (8th Cir.1990).

■ When making determinations regarding the credibility of a claimant's subjective allegations of pain, *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984) requires the administrative factfinder to examine such matters as: (1) the claimant's daily activities, (2) the duration, frequency and intensity of the pain, (3) dosage, effectiveness, and side effects of medication, (4) precipitating and aggravating factors, and (5) functional restrictions. *Polaski*, 739 F.2d at 1322. When rejecting a claimant's complaints of pain, however, the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony. *Ricketts v. Secretary of H.H.S.*, 902 F.2d 661, 664 (8th Cir.1990). The Notice of Decision in this case inadequately explains the inconsistencies relied upon by the ALJ in disbelieving appellant's allegations of pain and does not reveal that appellant's credibility was evaluated according to the factors set forth in *Polaski*.

■ The record inconsistencies relied upon by the ALJ to discredit appellant's allegations of disabling pain include: (1) appellant's daily activities, including her work as a hostess, (2) the lack of objective medical evidence, (3) appellant's "spotty" work record, and (4) the ALJ's personal observations of the claimant during the hearing. Of these four considerations, only the first is among the five factors enunciated in *Polaski*. Examining each of the alleged inconsistencies cited by the ALJ individually, we are not persuaded that they are of such a substantial nature as would support the ALJ's credibility determination.

1. Appellant's Daily Activities and Employment

■ A claimant's daily activities is one factor to be considered in evaluating the credibility of a claimant's subjective allegations of pain. *Polaski*, 739 F.2d at 1322. However, the administrative findings with respect to this factor did not explain in what manner appellant's daily activities are inconsistent with her allegations of pain. It is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations. *Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir.1986); *Douthit v. Bowen*, 821 F.2d 508 (8th Cir.1987). Absent such a clarification of the ALJ's determination, it cannot be said that substantial evidence supports the determination that appellant's daily activities are inconsistent with her allegations of pain. *Ricketts v. Secretary of H.H.S.*, 902 F.2d 661 (8th Cir.1990).

■ The ALJ's evaluation of the alleged inconsistencies between appellant's daily activities and her physical limitations focused exclusively on her part-time employment as a hostess, but our own evaluation of the evidence on this point leads us to doubt that her duties in the restaurant were inconsistent with her allegations of pain. As noted in the Notice of Decision, appellant's work duties sometimes did involve performing exertional tasks which significantly exceed the limitations of sedentary work activity. We have stated, however, that to qualify for work at any level a claimant must have the ability to perform the requisite physical tasks of employment on a daily basis. *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir.1989). Appellant's ability merely to perform the limited service of pouring coffee or removing the excess plates from a table on an occasional basis does not compel a conclusion that a claimant is capable of performing the full range of sedentary work on a sustained basis. *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982). An ALJ should not penalize a claimant who, prior to

an award of benefits, attempts to make ends meet by working in a modest, part-time job. The presumption that a claimant is not disabled merely because the claimant had a lenient employer, a high tolerance for pain, or no other means of support would unfairly shift the burden of proof back onto the claimant at a point in the proceedings when the burden rightfully belongs to the Secretary.

The record reflects that appellant's continued employment in her position as a hostess was only by the good graces of her employer, who tolerated her limitations and who deliberately restricted her on the job duties to tasks which she was capable of performing. (TR. 46). The restrictions her employer placed on appellant's on-the-job responsibilities serve to corroborate appellant's testimony regarding the physical limitations she experiences from her pain. Appellant was permitted to remain on the job despite the fact that she had fallen often. (TR. 46). She was able to pour coffee for customers and remove plates from a table two or three at a time only with the assistance of a steel wrist brace. (TR. 41–43, 46–47, 50, 62–63, 161). Appellant's largely passive work responsibilities are not inconsistent with her testimony regarding her limitations and the ALJ's finding that appellant is no longer capable of performing her duties as a hostess is consistent with the medical evidence that describes plaintiff's condition as a degenerative one which will worsen in time.

Other than appellant's employment as a part-time hostess, the ALJ did not discuss any of appellant's other daily activities which are inconsistent with her subjective allegations of pain. Our examination of the functional restrictions experienced by appellant leads to the conclusion that her daily activities are entirely consistent with her allegations of pain. Appellant is unable to wash her own hair without her husband's assistance. (TR. 55). Appellant can drag, but not lift a gallon container. (TR. 63). Driving an automobile requires all of appellant's residual physical strength to control the car so appellant restricts her driving to short trips to the grocery store. When grocery shopping, appellant must pull rather than push her grocery cart. For transportation to the hospital, appellant relies on the hospital's service car. (TR. 63). Appellant prepares meals at home, although she experiences pain using small kitchen appliances. Throughout the remaining hours of her days, the record does not reflect that appellant engages in any recreational or other activity even remotely strenuous which is inconsistent with her allegations of pain. (TR. 54–56, 64, 67–68).

In *Thomas* we stated that an SSI claimant need not prove that she is bedridden or completely helpless to be found disabled and the fact that claimant cooks and cleans for herself, shops for groceries, does laundry, visits friends, attends church, and goes fishing does not in and of itself constitute substantial evidence that a claimant possesses the residual functional capacity to engage in substantial gainful activity. *Thomas*, 876 F.2d at 669. The uncontradicted evidence of appellant's daily activities establishes a pattern of restricted activity consistent with her claims of disabling pain and constitutes substantial evidence in support of her application.

2. The Objective Medical Evidence

■ Although not a factor under *Polaski*, an ALJ can rely upon objective medical evidence which corroborates a claimant's allegations of pain to find in favor of a claimant, but objective medical evidence is not needed to support subjective testimonial evidence of pain and an ALJ may not base a denial of benefits solely on a lack of objective medical evidence. *Polaski v. Heckler*, 751 F.2d 943, 953 (8th Cir.1984); *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir.1984).

The objective medical evidence in this case consists of examination reports from numerous physicians consulted by appellant in the course of attempting to obtain relief from her condition. With the exception of the examination conducted by Dr. Naides of the University of Iowa, the reports of appellant's prior examining physicians are simply inconclusive, not inconsistent. Up until appellant was seen by Dr. Naides in March 1987, none of appellant's

prior physicians appeared to have performed the necessary examinations to properly diagnose appellant's affliction. Appellant was seen by five doctors who diagnosed inflammation of the joints, and prescribed medication for this condition. Two of those doctors hypothesized that appellant was suffering from carpal tunnel syndrome, but neither doctor performed the requisite medical tests to confirm the hypothesis.

After visiting five other physicians, appellant was finally diagnosed as suffering from fibromyalgia by Dr. Naides after extensive tests which ruled out carpal tunnel syndrome and the other diagnoses of appellant's previous physicians. As Dr. Naides' examination is the first to provide a conclusive diagnosis of appellant's condition, it is his medical evidence which is most credible. *Cf. Lanning v. Heckler*, 777 F.2d 1316 (8th Cir.1985). Dr. Naides's opinion states that fibromyalgia can, though will not usually, result in total incapacitation and that a patient's subjective pain and discomfort can limit the patient's work capacity. (TR. 165–66). He reports that fibromyalgia is a degenerative disease which results in symptoms, such as achiness, stiffness, and chronic joint pain, which are consistent with appellant's condition. While Dr. Naides states that fibromyalgia does not usually lead to total incapacitation, he does not rule out that it can, and he expresses no opinion as to whether appellant's condition is so severe as to be disabling. The medical evidence introduced in this matter is sufficiently convincing and consistent with appellant's claims of disabling pain that we are comfortable in stating, in light of the remaining evidence and the absence of contradictory medical proof, that substantial evidence does not support of the ALJ's adverse credibility determination on this point. *Prince v. Bowen*, 894 F.2d 283 (8th Cir.1990); *Johnson v. Heckler*, 744 F.2d 1333, 1338 (8th Cir.1984).

The ALJ's opinion does not purport to rely solely on the alleged absence of supportive medical evidence to discredit appellant's allegations of pain, and, indeed, the task of determining appellant's eligibility would have been easier if the medical evidence were stronger one way or the other. Finding, as we must, that the remaining factors relied upon by the ALJ are insubstantial, the net result of our inquiry is that the inconclusive medical evidence stands alone as a potential justification for the denial of appellant's application for benefits. It being impermissible to deny benefits for a nonexertional impairment such as pain on this basis alone, and finding appellant credible in all other respects, we can not say that fairness is obtained by denying appellant's claim merely because the objective medical evidence in favor of her claim could have been stronger.

### 3. Appellant's Work Record

The ALJ cites appellant's "spotty" work record as evidence in support of his credibility finding against appellant. When evaluating a claimant's subjective allegations of pain, a claimant's work record is not among the five factors set forth in *Polaski*. Again, other than this one-sentence statement, the ALJ did not elaborate on his findings in what way appellant's work record is inconsistent with her allegations of pain. As noted above, it is not enough that inconsistencies may be said to exist, the ALJ must set forth the inconsistencies in the evidence presented and discuss the factors set forth in *Polaski* when making credibility determinations. *Herbert*, 783 F.2d at 131. Absent such a clarification of the ALJ's determination, it cannot be said that the ALJ's subjective opinion of appellant's work record constitutes substantial evidence in support of his determination that appellant's allegations of pain are not credible, *Ricketts*, 902 F.2d at 664.

### 4. The ALJ's Personal Observations of Appellant During the Administrative Hearing

■ One factor considered by the ALJ in denying appellant's claim is his personal observation that appellant was able to sit throughout the course of the hearing "without apparent discomfort." An ALJ is permitted to take notice of a claimant's demeanor during an administrative hear-

ing, however the ALJ is not free to reject a claimant's credibility on account of the claimant's failure to sit and squirm during the hearing. *Rheinhart v. Secretary of H.H.S.*, 733 F.2d 571, 573 (8th Cir.1984). Pain/credibility determinations necessarily require, to a large extent, the quantification of unquantifiable, subjective sensations of pain, a difficult task which invites undue reliance on personal observation. Any system of administrative adjudication which would attach determinative weight to appearances would be fraught with the potential for manipulation because outward manifestations of pain can easily be contrived by a calculating claimant, or suppressed by a hardy claimant. In light of the ALJ's failure to undertake the appropriate *Polaski* analysis, it would appear that the ALJ gave inordinate weight to this consideration.

To the extent that appellant's lack of apparent discomfort could appropriately be considered, it is noteworthy that this observation conflicts with the claimant's testimony that her feet had become very painful as a result of sitting in the chair for 50 minutes during the administrative hearing. Appellant's statement that her feet had become sore is consistent with her testimony that she experiences discomfort when sitting unless she is able to elevate her feet, as she was unable to do during the hearing. We do not believe the ALJ's observation of claimant's ability to remain alert despite personal discomfort is contradictory to claimant's allegations of disabling pain or is evidence of a substantial nature in support of a finding discrediting appellant's credibility.

## IV. POLASKI ANALYSIS

■ As previously noted, credibility evaluations of a claimant's subjective allegations of pain are undertaken according to the five factors set forth in *Polaski*. With regard to the first factor, appellant's daily activities, discussed above, the record does not reveal inconsistencies of a substantial nature in support of the ALJ's credibility determination.

As respects the second factor, the record is replete with appellant's uncontradicted testimony concerning the duration, frequency, and intensity of the pain she experiences. Appellant testified that she is unable to stand for "any length of time because my legs—my joints swell up, which is painful." (TR. 54). Appellant testified that her entire body is in pain all the time and that she cannot remember a day in recent years when she has not been in pain. (TR. 59). Appellant testified that she can escape pain only by becoming heavily medicated and falling into a deep sleep. (TR. 54, 56, 58). Appellant experiences a "constantly aching" sensation in her bones, "numbness," pain which "feels like [her] chest is being crushed," and shortness of breath. (TR. 55–63). The objective medical evidence is supportive of appellant's claims of disabling pain. Dr. Naides' diagnosis of fibromyalgia is entirely consistent with appellant's symptoms. While Dr. Naides' report does not go the extra step by stating that in his opinion appellant's condition is so severe as to be disabling, there is nothing in his report which is inconsistent with appellant's subjective assertions that the pain she has experienced has left her incapable of gainful employment.

A claimant's allegations of disabling pain may be discredited under the third *Polaski* factor by evidence that the claimant has received minimum medical treatment and/or has taken medications for pain only on an occasional basis. *Williams v. Bowen*, 790 F.2d 713 (8th Cir.1986). The record in this case reflects that, beginning in 1985, appellant has persistently sought medical care and has continually received prescription medication for relief of hypertension and muscle inflammation. Starting with Motrin, appellant was prescribed successively stronger pain relief medications, which proved largely ineffective in relieving appellant's joint pain and which led to appellant developing severe stomach ulcers. (TR. 58). Appellant testified to the need to take substantial dosages of other prescription medication, including: Centrax for headaches, 10 milligrams 3 times a day; Feldene for anti-inflammation, 20 milligrams once a day; Clinoril for anti-inflam-

mation, 150 milligrams twice a day; Amitriptyline, 4 tablets at bedtime; Diazide for hypertension, 1 capsule 2 times a day; Hydrochlorathorizide, 50 milligrams once a day; Tagomet for gastric distress, 1 tablet 3 times a day; and Methcarbonal for muscle relaxation, 50 milligrams, 1 tablet 4 times a day. (TR. 64–65). Appellant finds it necessary to take these medications despite serious side-effects, including disorientation from Methcarbonal; chest pain and shortness of breath from Feldene; ulcers, vomiting from pain killers; dental deterioration from the combination of medications. (TR. 65, 59, 58).

Finally, an evaluation of the fourth and fifth *Polaski* considerations, factors which precipitate and aggravate appellant's condition and the resulting functional restrictions, is largely incorporated in the foregoing discussion. There is simply no evidence in the record of substantial weight which is inconsistent with appellant's testimony regarding her physical limitations. *Herbert v. Heckler*, 783 F.2d 128, 131 (8th Cir.1986).

## V. CONCLUSION

As set forth above, the record reveals more evidence detracting from the ALJ's repudiation of appellant's allegations of pain than may be fairly said to support the determination. The first eight pages of the Notice of Decision are devoted to detailing the evidence in the record, yet this evidence is then summarily evaluated in a single paragraph. The hearing record indicates that the substantive aspects of the ALJ's examination of the appellant were exclusively directed towards eliciting from appellant the very "inconsistencies" later cited by the ALJ as cause to deny appellant's claim. Evidence developed in an administrative hearing must be fully and impartially evaluated and resolved to meet the ends of justice, not molded to fit the predispositions of the factfinder.

An administrative law judge must do more than make cursory reference to *Polaski* when examining the evidence relating to a claimant's subjective complaints of pain. *Polaski* requires an examination of

five factors in such cases and a discussion in the record of the relation of those factors to the evidence. Our review of those five factors strongly indicates the credibility of appellant's claims. The ALJ's credibility analysis, which discusses only one of the appropriate factors, is clearly erroneous and unsupported by substantial evidence. Accordingly, the ALJ's reference to the medical-vocational guidelines to direct a finding of non-disability is also in error as reliance on the guidelines is permitted only in cases involving exertional impairments and nonexertional impairments which do not limit a claimant's residual functional capacity.

When the Secretary erroneously concludes that a claimant's allegations of pain are not credible and denies benefits based upon the medical-vocational guidelines, remand for further proceedings to more fully develop the record or for procuring expert vocational testimony is generally appropriate. *Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir.1987). However, in cases such as this, where the total record convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate. *Jefferey v. Secretary of H.H.S.*, 849 F.2d 1129, 1133 (8th Cir.1988); *Beeler v. Bowen*, 833 F.2d 124, 127–28 (8th Cir.1987). Accordingly, we reverse the judgment of the district court and remand this case to the district court with directions to remand to the Secretary for an award of benefits in the appropriate amount. It is so ordered.