**Delores A. MILLER, Appellant,**

v.

**Louis W. SULLIVAN, Secretary of Health & Human Services of the United States, Appellee.**

**No. 91–1341.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1991.

Decided Jan. 8, 1992.

Robert W. Pratt of Des Moines, Iowa, for appellant.

Michael R. Fry of Kansas City, Mo., Gene W. Shepard and Richard L. Richards of Des Moines, Iowa, and (Frank V. Smith, of counsel), and Michael R. Fry of Kansas City, Mo., on the brief, for appellee.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and LOKEN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Delores Miller, a fifty-five-year-old former receptionist, applied for Social Security disability benefits provided by 42 U.S.C. § 423 (1988), in 1987, claiming disabling neck, back and leg pains. The Secretary and the district court have rejected Miller's claim finding her allegations of disabling pain not credible and unsupported by objective medical evidence. We reverse and order the district court to order the Secretary to grant Miller benefits because the Secretary, in finding her claims not credible, did not base his denial on substantial evidence.

## I. BACKGROUND

Miller filed a disability benefits claim on January 26, 1987, alleging disability due to osteoarthritis beginning on June 6, 1985. The Administrative Law Judge (ALJ) held an administrative hearing on October 27, 1987 and filed a Notice of Decision denying Miller's claim on December 29, 1987, which Miller appealed to the district court. On February 22, 1989, the district court remanded Miller's case for further hearings to the ALJ to make express determinations about Miller's credibility. The ALJ held a second hearing on June 1, 1989 and filed a second Notice of Decision denying Miller's claim on June 15, 1989 after making express determinations regarding Miller's credibility. Miller again appealed to the district court, which affirmed the ALJ's decision on December 17, 1990. This appeal followed.

Miller claims that her disability due to osteoarthritis began on June 6, 1985 when she was age fifty-one. Miller has a GED and completed training at a beauty school in the 1960s. She has worked as a bookkeeper, a sales clerk and a beauty school instructor. She last worked as a receptionist and switchboard operator, doing various types of office work.

Miller's major health problems relate to her neck and back. She sustained injury in a car accident in 1971, when her head slammed into a windshield, giving her a concussion. From 1975 to 1984, she complained to her doctors about chronic intermittent neck pain. I Administrative Record (AR) at 120. In July 1984, Miller visited the Mayo Clinic and Dr. Bruce Krueger supervised tests and examinations of Miller to determine the cause of her neck pain. Miller then visited St. Mary's Hospital where she was admitted for ten days to undergo tests and rehabilitation. *Id.* In September 1984, Dr. Robert Jones,

at Mercy Hospital Medical Center in Des Moines, performed a cervical fusion on Miller at C5–6 and removed an extruded disk to relieve pain Miller suffered in her arms and neck. *Id.* at 132.

Although fusion surgery brought Miller temporary relief, in March 1985 she complained to Dr. Harold Eklund, at Mercy Medical Clinic, that she suffered chronic aches and pains in her neck and back. *Id.* at 147. In April 1985, Miller continued to complain of aches and pains and Dr. Eklund concluded that Miller looked "somewhat chronically ill." *Id.* at 148. On September 28, 1985, Dr. Jones examined Miller and concluded from a myelogram that Miller did not suffer any discernable neurological problems. *Id.* at 153. However, Dr. Jones concluded that Miller suffered from spondylosis, or degeneration through aging, of the cervical spine. *Id.*

In March 1986, Miller suffered from abnormal vaginal bleeding. Dr. Albert Mintzer performed an abdominal hysterectomy on Miller. Dr. Mintzer examined Miller before surgery and described Miller as a "well nourished female in no acute distress." *Id.* at 164.

In September 1986, Miller visited Dr. Jones again, complaining of back pains. *Id.* at 168–70. After performing tests and x-rays, Dr. Jones could determine no medical cause of Miller's pain. In October 1986, Miller visited Dr. Louis Kirchhoff, at the University of Iowa Clinic, complaining of shooting pains down her back into her legs. Suspecting that Miller suffered from lumbar stenosis, doctors at the University of Iowa performed a lumbar myelogram on Miller and found no stenosis. *Id.* at 171. In January 1987, Miller visited Dr. Theodore Rooney, a rheumatologist, at the Mercy Arthritis Center. Dr. Rooney concluded that her symptoms of chronic back and neck pains suggested "intermittent nerve entrapment without objective neurologic findings," and prescribed physical therapy. *Id.* at 190–92. On March 2, 1987, Dr. Jones, after reviewing Dr. Rooney's diagnosis, wrote the Disability Determination Service Office in Des Moines and stated that when he saw Miller in December she

had a "shuffling gait" that he could not explain. He concluded: "it appears that she is unable to work." II AR at 136.

## II. HEARING

At the first hearing, Miller and a vocational expert testified. According to Miller, she last worked for four years as a receptionist and switchboard operator. She worked eight hours a day, sitting and standing in her job. She earned roughly $1,000 a month. She claims that she left her job in June 1985 due to pain in her spine.

Miller described pain in her neck that radiates in a burning manner into her arms, fingers, lower back and legs. I AR at 48–49. Miller stated that although she feels pain "constantly," *id.*, occasionally she has "good days" when she can shop or do household chores, *id.* at 66–67. Miller stated that she often has trouble standing and must use a walker for support. *Id.* at 50. Miller described a home traction unit that she uses to relieve her pain between one to six times a day. *Id.* Miller stated that she takes Darvocet regularly for her pain and Diocide to relieve high blood pressure. *Id.* at 54.

Miller stated that she can walk no more than a block before she loses control of her legs. *Id.* at 58. She stated that she can lift no more than five pounds and cannot sit for more than an hour without having to lie down for at least fifteen minutes. *Id.* at 59. Miller claimed that she must lie down to relieve her back pain between five to six times a day. *Id.* at 60. Miller stated that her husband leaves during the day, working twenty-four-hour shifts for the Des Moines Fire Department. When alone, Miller stated that she can prepare her own meals, consisting of TV dinners, and can dress herself and perform small household chores. *Id.* at 67.

A vocational expert (VE) testified, responding to hypotheticals posed by the ALJ. In the first hypothetical, the ALJ asked the VE to describe potential jobs for a worker with Miller's education who can occasionally carry twenty pounds and frequently carry ten pounds; a worker, with a

mild inability to concentrate, who can occasionally bend, stoop or squat. The VE responded that such a person could work as a sales clerk or a receptionist. The ALJ posed to the VE a second hypothetical, assuming a person with Miller's background who could lift no more than five pounds occasionally and who could sit for no more than an hour, but could find relief in standing and walking for a few minutes. The VE responded that such a person could work as a receptionist, a telemarketer or a parking lot attendant. Finally, the ALJ asked the VE to assume that the worker in the second hypothetical could only lie down for relief for fifteen minutes every hour. The VE responded that no employer in any industry would tolerate such behavior by an employee. Also, the VE testified that no employer would tolerate an employee taking time off from work during the day to use a home traction device.

The ALJ granted that Miller could not return to her past relevant work, finding that she could lift no more than five pounds regularly. However, the ALJ discounted Miller's claims of disabling pain. The ALJ noted that no objective neurological evidence supported Miller's symptoms and that no doctor had prescribed Miller a home traction unit. Thus, the ALJ concluded that Miller could sit for an hour a day, and then could stand for relief, and also concluded that Miller did not need to use a home traction device during the day to relieve her pain. Thus, the ALJ concluded that, although Miller could not return to her previous relevant work, she was not disabled because she could work as a telemarketer, an office helper or a parking lot attendant.

After Miller appealed these findings, the district court remanded, holding that the ALJ could not discount Miller's complaints of pain solely because they were not explicitly supported by the medical record. The district court ordered the ALJ to make express determinations regarding Miller's credibility and to set forth inconsistencies between Miller's claims and the medical record.

On remand, the ALJ examined Miller again and concluded that her testimony contained numerous inconsistencies. The ALJ found that Miller lacked general credibility in her suggestions that she suffered from a disability. Reversing his prior finding, the ALJ found that Miller can lift and carry ten pounds frequently and twenty pounds occasionally. The ALJ concluded that Miller could not return to her past relevant work as a receptionist or a beauty school instructor, but could return to her past relevant work as a retail sales clerk. The district court affirmed the ALJ's decision, finding that the ALJ properly assessed the credibility of Miller's claims.

## III. DISCUSSION

■ We must uphold the Secretary's decision if he based his decision on substantial evidence in the record as a whole. We must not only examine whether substantial evidence exists in the record supporting the Secretary's decision, for we must also examine whatever in the record detracts from its weight. *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir.1991).

■ The ALJ rejected Miller's claims of disabling pain as not credible. When making determinations regarding the credibility of a claimant's subjective allegations of pain, *Polaski v. Heckler,* 739 F.2d 1320, *supplemented* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167. 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987), the ALJ must examine: (1) the claimant's daily activities; (2) the duration and intensity of the pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) functional restrictions. *Id.* at 1322. An ALJ may not reject subjective complaints solely because they lack support in the medical record. *Id.* at 1321.

### A. *Polaski* Analysis

■ The ALJ's second opinion lists a number of reasons why Miller's claims of disabling pain lack credibility. However, the ALJ did not properly apply the *Polaski*

criteria in rejecting Miller's claim. Ultimately, the ALJ disregarded Miller's complaints of pain because they were not supported by objective medical evidence. However, not only must Miller's claims lack support in the medical record—they also must be "inconsistent with the record as a whole." *Brown v. Sullivan,* 902 F.2d 1292, 1294 (8th Cir.1990).

### 1. Daily Activities

■ In accordance with *Polaski,* the ALJ analyzed Miller's lifestyle. Miller claimed in both hearings that, after she became disabled, she spent most of her days lying down with a heating pad watching television, getting up only to do traction therapy or small chores. The ALJ stated that Miller "admitted her husband is a fireman. Therefore, he works 24 hours and is off 48 hours. During the time that he is working, claimant is alone at home. She is responsible for meal preparation, etc. This blunts the previous impression as to a marked change in lifestyle." II AR at 252. Miller may prepare her own meals or perform small household chores in her husband's absence. However, a claimant need not spend all of her time in bed or be unable to perform chores to suffer disabling pain. *See Ludden v. Bowen,* 888 F.2d 1246, 1248 (8th Cir.1989). We do not believe Miller's modest activities conflict with her allegations of pain.

1. Dr. Rooney described Miller's condition as follows:

It was a pleasure to see this 55-year-old white female who is a homemaker for evaluation of back and leg pains. Her first musculoskeletal complaints developed sixteen years ago following an auto accident in which she was thrown into the windshield and suffered a concussion. Since that time she has had significant neck pains with intermittent exacerbations. Because of this chronic neck pain, she was seen at the Mayo Clinic eleven years ago. At that time she was told she had nonsurgical disease and was recommended conservative medical therapy. She used hot baths and other measures but her symptoms progressively got worse. Two and a half years ago she was reevaluated at Mayo Clinic and spent 5½ weeks. During that time, she was told that she had degenerative arthritis of the neck and "pinched nerves". She underwent physical therapy and a variety of diagnostic studies.

### 2. Duration and Intensity of Pain

In considering Miller's descriptions of her pain, the ALJ chose to contrast Miller's claim that she experiences "constant pain" with her statements to Dr. Rooney, who stated that Miller described her pain as "intermittent." Dr. Rooney also stated that Miller "has also noted occasional radiation of pain into the right thumb and index finger and left little finger, again on an intermittent basis." I AR at 190. The ALJ concluded that Miller's allegation lacked credibility because " '[i]ntermittent' and 'occasional' are not the same as 'constant.' " II AR at 252.

However, when we read Dr. Rooney's letter to Dr. Jones, we see that Dr. Rooney stated that Miller had "significant neck pains with intermittent *exacerbation.* " Later, Dr. Rooney described Miller's pain as chronic.[1] Also, Miller herself admitted that although she suffers some degree of pain constantly, she has "good days" and bad days and on good days she can go to the grocery store or perform small chores at home. I AR at 66–67. We fail to see inconsistency between Miller's description of her pain to the ALJ and the way she described her pain to Dr. Rooney and other physicians.

### 3. Treatment

Dr. Jones prescribed Miller Darvocet, a strong pain killer, for Miller's back pain. She subsequently had a myelogram and was diagnosed as having a ruptured disc at C4 and underwent a laminectomy and fusion with significant improvement for four months. About two years ago, she developed recurrent pain in the back and neck radiating down the spine into the low back. These symptoms have now radiated down into the legs. She describes intermittent numbness in the left great toe and a dull aching sensation of an intermittent basis in the right heel. Now for the past two years she has been bothered by this intermittent discomfort that may be precipitated by physical overactivity, bending or lifting. The days that she is not bothered with these symptoms, she is able to ambulate almost normally. She has also noted occasional radiation of pain into the right thumb and index finger and left little finger, again on an intermittent basis.

Letter from Dr. Theodore Rooney to Dr. Robert Jones, Jan. 13, 1987, at 1 (I AR at 190).

Miller and the ALJ agree that Miller does not suffer any side effects from Darvocet when she takes the prescribed amount.

As required by *Polaski*, the ALJ also examined Miller's other "treatment modalities." Miller stated that she needs a walker to assist her in standing up and getting around the house. The ALJ found that Miller's claim to need a walker lacks credibility because "no walker has been prescribed." However, Dr. Jones prescribed a walker for Miller on December 17, 1986. II AR at 350. Miller also stated that she relies heavily on a home traction unit to relieve her neck and back pain. The ALJ stated that her claim to need such a unit lacked credibility because no unit has been prescribed by a doctor. However, the ALJ never asked Miller for specific documentation regarding the home traction unit. The ALJ has a duty to develop the record fully and fairly and should have sought specific documentation from Miller if he felt that her credibility rested on whether a doctor had prescribed her such a unit. *See Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir.1990); *Sykes v. Bowen*, 854 F.2d 284, 287 (8th Cir.1988). Miller claims that doctors at the Mayo Clinic instructed her on the unit's use in July 1984. A letter from Dr. Krueger to Dr. Garcia dated August 14, 1984, in which Dr. Krueger described Miller's admission at St. Mary's Hospital for "intensive physical medicine and rehabilitation," corroborates Miller's claim. I AR at 120. Given that some evidence in the record may support Miller's claim that the Mayo Clinic prescribed her home traction unit, we cannot hold that her inability to present written documentation of a prescription for the unit constitutes substantial evidence that her claims of pain lack credibility.

The ALJ did not examine the third and fifth factors of the *Polaski* test regarding precipitating and aggravating factors, and functional restrictions, and we see no substantial evidence in the record suggesting that Miller's claims of pain lack credibility with regard to those factors.

### B. Work Record

The ALJ discounted Miller's credibility because she had ten employers between 1965 and 1985 and earned no more than $10,000 in one year, concluding that "[t]his is not a good work history." II AR at 251. The ALJ did not explain why Miller's poor work history relates to her allegations of pain. Absent further analysis, the ALJ's opinion of Miller's work record does not constitute substantial evidence in support of his determination that Miller lacked credibility in asserting her allegations of disabling pain. *See Cline*, 939 F.2d at 567.

### C. Claimant's Demeanor

The ALJ found that Miller demonstrated at both hearings "no obvious signs of physical or mental impairment." II AR at 251. He concluded that "her demeanor was not consistent with pain." *Id.* Although the demeanor of a claimant may be noticed by an ALJ, the ALJ cannot reject a claimant's credibility on account of failure to "sit and squirm" during a hearing. *See Rheinhart v. Secretary of HHS*, 733 F.2d 571, 573 (8th Cir.1984). We have stated in the past that "[a]ny system of administrative adjudication which would attach determinative weight to appearances would be fraught with the potential for manipulation because outward manifestations of pain can easily be contrived by a calculating claimant, or suppressed by a hardy claimant." *Cline*, 939 F.2d at 568. Therefore, Miller's demeanor at the hearing cannot constitute substantial evidence supporting the Secretary's decision.

### D. Medical Record

The ALJ discounted Miller's allegations of pain due to inconsistencies that the ALJ found between Miller's claims and the medical record. The ALJ stated that, although Miller claims disabling pain in her back, neck and extremities, doctors have not observed either muscle wasting, muscle atrophy or decreased muscle strength. II AR at 252. We observe that, although muscle deterioration may result from disuse, disabling pain does not always result in muscle disuse. Therefore, the ALJ can-

not discount Miller's claim simply because she does not show an effect that other people suffering from disabling pain may show. The ALJ identified no inconsistency in Miller's testimony. Instead he reasoned that the lack of objective medical evidence supporting Miller's claim produces an inconsistency in Miller's testimony.

## IV. CONCLUSION

The record reveals that the ALJ failed to produce substantial evidence discrediting Miller's subjective allegations of disabling pain. Miller consistently complained to her doctors that she suffered pain in her back and neck. Miller's doctors did not locate a specific cause of Miller's pain. However, Miller's personal physician believed Miller's discomfort strong enough to prescribe a potent pain-killing medication. As we noted in *Polaski*, "direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." 739 F.2d at 1322. We hold that no substantial evidence in the record effectively refutes the credibility of Miller's subjective complaints of pain.

The vocational experts who testified at both hearings agreed that if Miller's claims of disabling pain are true, then Miller cannot work for any employer in this economy.[2] Thus, no issue exists as to Miller's disabling condition. The judgment is reversed and the cause remanded to the district court with directions to remand it to

the Secretary for an award of benefits in the appropriate amount.

---

2. We are somewhat troubled that the ALJ found that Miller could return to her past relevant work as a retail sales clerk. Miller worked at a Target store between September 1970 and January 1971. Miller had not worked at that job for at least 15 years when she applied for benefits. The regulations specify that usually an ALJ does not consider relevant work performed more than 15 years ago. 20 C.F.R. § 404.1565 (1989). The regulation states that the 15 year time limit applies because "[a] gradual change occurs in most jobs so that after 15 years it is no longer realistic to expect that skills and abilities acquired in a job done then continue to apply." *Id.* The ALJ found that the job of retail salesperson had not changed in 15 years and therefore Miller could return to that line of work. The ALJ examined no evidence in arriving at this conclusion. Given the revolution in com-

puter technology and automation that has occurred over the last 15 years, we would be surprised if a vocational expert concluded that the job of a retail sales clerk has not changed significantly over the last 15 years.

We are also troubled because the ALJ recommended that Miller could work as a retail sales clerk, a very difficult vocation for people with leg and back problems. Miller stated that she needs help standing and cannot walk more than a block. Nonetheless, the ALJ decided that she could work at a job that requires that she either stand or walk for the entire day, with few opportunities to rest. Even if Miller exaggerated her claims of discomfort, and the record does not suggest that she did, the ALJ clearly erred in finding that Miller could return to work as a retail sales clerk.