45 F.Supp.2d 674 (1999)
Kenneth E. DALE, Plaintiff,
v.
Kenneth S. APFEL, Commissioner of Social Security, Defendant.
No. 4:97 CV 2474 DDN.
United States District Court, E.D. Missouri, Eastern Division.
March 11, 1999.
*675 Ray B. Marglous, Clayton, MO, Edward A. Gilkerson, St. Louis, MO, for Kenneth Dale, plaintiff.
Claire M. Schenk, Patrick T. Judge, Sr., Office of U.S. Attorney, St. Louis, MO, for Social Security Administration, Kenneth S. Apfel, defendant.

MEMORANDUM
NOCE, United States Magistrate Judge.
This judicial action is before the Court upon the motions of the parties for summary judgment under Rule 56, Federal Rules of Civil Procedure. The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).
Plaintiff Kenneth E. Dale has brought this action for judicial review of the denial of his claim for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, et seq. Plaintiff applied for these benefits on February 29, 1996, alleging he became disabled on June 14, 1995, at age 37, due to a back injury, nerve damage, injured knees, and elbow pain. (Tr. 84-87, 100, 110). In the administrative hearing, plaintiff also alleged bladder problems. (Tr. 45). The application was denied after initial consideration and reconsideration.
Following an evidentiary hearing, an Administrative Law Judge (ALJ) denied the claim on January 14, 1997. The Appeals Council considered the further information provided by the plaintiff but denied his request for review.
In her written decision, in reaching the conclusion that plaintiff was not disabled, the ALJ made the following findings of fact and conclusions of law:
1. Plaintiff has met the insured status requirements of the Act from June 14, 1995, the alleged onset date, through the date of the ALJ's decision.
2. Plaintiff has not engaged in substantial gainful activity since June 14, 1995.

*676 3. Plaintiff suffers from severe impairments, none of which singly or in combination is listed in, or which is the medical equivalent of an impairment listed in, the Commissioner's list of disabling impairments.
4. Plaintiff's testimony was not "fully credible."
5. Plaintiff has the residual functional capacity to perform work related activities, except for work which requires lifting and carrying more than 10 pounds; sitting more than 6 hours during an 8-hour day; standing or walking more than occasionally; and pushing or pulling more than 10 pounds.
6. Plaintiff's ability to perform work-related tasks is not significantly reduced by his nonexertional impairment.
7. Plaintiff is able to perform his past relevant work as a desk clerk.
8. Plaintiff is not disabled under the Social Security Act.
(Tr. 19).
To establish entitlement to benefits on account of disability, in the prescribed five-step analysis, see 20 C.F.R. § 404.1520, plaintiff must first prove that one or more medically determinable impairments prevents him from performing his past relevant work.[1]See Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir.1993).
The Court must affirm the findings of the ALJ that are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is relevant evidence which a reasonable person could accept as adequate to support the conclusion that plaintiff is not disabled under the Act. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In reviewing the record, the Court may not make its own findings of fact or substitute its judgment for that of the Commissioner. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir.1986). Nevertheless, this standard of review is more than a rubber stamp for the Commissioner's decision, and more than a search for substantial evidence supporting it. "[T]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." McMillian v. Schweiker, 697 F.2d 215, 220 (8th Cir.1983) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 478, 71 S.Ct. 456, 95 L.Ed. 456 (1951)); Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir.1987).

Administrative record.
Dale was injured on March 20, 1994. While unloading a truck, a 500 pound pallet fell on him. (Tr. 32, 33.) He was treated at Saint Louis University Hospital where a blunt trauma was diagnosed. (Tr. 145.) Computer tomographies (CT scans) showed no evidence of fracture to plaintiff's pelvis, right hand, right hip, cervical spine, or lumbar spine. (Tr. 155-60.)
Plaintiff ultimately returned to light duty doing desk work. Dale testified that the desk work included "dock operations and coding bills and ... whatever they needed me to do." The nature of this work was such that the employer feared the risk of further injury to plaintiff's back. (Tr. 44.)
On March 5, 1995, plaintiff was injured again on the job, when a crate struck his left knee. (Tr. 35.) Richard H. Ashby, M.D., examined plaintiff at the request of his employer. Plaintiff complained of problems with urination and persistent pain in his back. Dr. Ashby noted that plaintiff had normal cervical and thoracic curvature with a somewhat diminished lumbar spinal curvature. Some non-severe tenderness over plaintiff's thoracic and lumbar spine was noted. Plaintiff *677 walked normally. Extension and lateral bending were limited to ten degrees. Straight leg raising was painful at 30 degrees. There was no weakness or atrophy in any muscle group. Dr. Ashby noted evidence of disc rupture at T12-L1 but found no neurological damage. (Tr. 188.) Dr. Ashby reported that plaintiff had "a lot" of psychological overlay and that the T12-L1 condition did not explain all of his complaints. (Tr. 189) Plaintiff continued to work. (Tr. 187.)
On March 6, 1995, Ed Reh, M.D., examined plaintiff. At that time plaintiff had minimal complaints and reported great improvement. Plaintiff was able to continue his daily activities without problem. (Tr. 336.)
On April 13, 1995, plaintiff was seen by Dr. Hollocher regarding an injury to his right knee. X-rays showed a severe contusion to the right knee but no bone abnormalities, fractures, or dislocations. Plaintiff was placed on light duty for two weeks. (Tr. 293.)
Plaintiff last worked on June 14, 1995. On June 28, 1995, John E. Krettek, Jr., M.D., performed a left T12 laminectomy with a T12-L1 discectomy. Plaintiff was discharged with pain medication prescriptions. (Tr. 135.) Although plaintiff complained of urinary incontinence upon admission, it was resolved by the time of hospital discharge. (Tr. 135-36.)
On June 29, 1995, Dr. Krettek stated that plaintiff had a T12-L1 disc herniation. He thought plaintiff would be disabled from work from June 14 to September 1, 1995. (Tr. 175.)
In a letter dated December 28, 1995, Dr. Krettek wrote that plaintiff's bladder control problem had improved. (Tr. 180.)
On February 21, 1996, Dr. Krettek examined plaintiff and noted that he had full strength in all of his leg muscles. A myleogram showed degenerative disc changes at T12-L1 and L1-L2 but no instability of bone structures. There was no evidence of disc herniation or impingement of the spinal sac or of any nerves. (Tr. 177.)
On March 19, 1996, plaintiff underwent a functional capacity evaluation. V.J. Zuccarollo, O.T.R., and Holly Sabourin, a physical therapist, reported that plaintiff's alleged pain was not consistent with his demeanor and functional ability. (Tr. 170.) They stated that plaintiff had the ability to return to light duty that required lifting 35 pounds occasionally and 25 pounds frequently. Plaintiff was seen as able to perform sedentary, light, and moderate work. (Tr. 174.)
On March 26, 1996, Dr. Krettek stated that plaintiff would not be able to return to his previous work at the heavy or very heavy exertional level. Dr. Krettek noted that plaintiff was capable of performing light or moderate level duties that included lifting no more than 35 pounds, no above shoulder lifting, no lifting from a bent over position, and no twisting while lifting. According to Dr. Krettek, based upon the nature of his spinal condition, plaintiff had met his maximum medical improvement. (Tr. 169.)
On April 5, 1996, Michael J. O'Day, M.D., examined plaintiff's knee, leg, and back pain. Dr. O'Day noted that plaintiff said he had undergone surgery on his left knee with good results until his back was injured on the job. After his back injury, plaintiff complained of pain in both knees. Dr. O'Day diagnosed degenerative disk disease at T12-L1. Plaintiff told Dr. O'Day that the back surgery had not been very helpful. Upon examination, Dr. O'Day found that plaintiffs arm and leg muscles were normal. (Tr. 130.) Plaintiff also had normal ranges of motion for his shoulders, elbows, wrists, knees, and cervical spine. (Tr. 131-32.)
Records from Psychiatric Consultants show that plaintiff was seen once in 1995 and once in 1996. On April 17, 1996, plaintiff complained of feeling depressed about his injury and his inability to work. No medication was prescribed. (Tr. 231.)
*678 In a Medical Report Including Physician's Certification/Disability Evaluation dated May 10, 1996, Mauro J. Carranza, M.D., reported that plaintiff was unable to walk or stand for long periods of time. He also noted that plaintiff should not bend or lift heavy objects due to "an exaggeration of low back pain." Dr. Carranza stated that plaintiff would be incapacitated from working for six to 12 months. (Tr. 165.)
On October 25 and 28, 1996, plaintiff underwent a psychological evaluation by Arthur C. Littleton, Ph.D. Dr. Littleton reported that plaintiff reads at a high school level, with a sixth grader's arithmetic skills. (Tr. 305.) Dr. Littleton noted that plaintiff responded to testing in ways that suggested he was depressed. Based upon test results and his own observations, Dr. Littleton believed that plaintiff's ability to make decisions and to respond to distress was limited; he thought plaintiff had limited insight. Dr. Littleton also noted that plaintiff had a hysteroid adjustment to life. According to Dr. Littleton, plaintiff suffers from a moderately severe conversion disorder. Dr. Littleton opined that because of plaintiff's health concerns and his psychological impairment, he was permanently and totally disabled. (Tr. 307.)
An administrative hearing was held on November 15, 1996. Plaintiff testified that, after his injuries, his back pain was so intense he would sometimes leave the desk job to go home. (Tr. 44.) He testified that he had bladder problems due to nerve damage. Plaintiff also complained of bad knees, having had five knee surgeries since 1980. (Tr. 34.) He stated that he usually has back pain at a level of 8 on a scale of 1 to 10. (Tr. 39.) He takes prescription pain medication every six hours. (Tr. 36.) Plaintiff also takes amitriptyline because of nerve end damage. (Tr. 37.) He also takes a muscle relaxer. (Tr. 38.) Plaintiff stated that his medications give him blurred vision, make him tired, and cause stomach problems. (Tr. 48.) Besides medication, plaintiff said he also lays on his back and uses a heating pad and ice to alleviate pain. (Tr. 39.) Plaintiff stated that his back pain radiates down his legs to his feet. (Tr. 41-42.)
Plaintiff testified that he tried to lift 35 pounds and carry 25 pounds, but could do so only with some difficulty. (Tr. 33.) At another time in the hearing he testified that he could only lift 15 pounds. (Tr. 44-45.) Plaintiff said he could stand for ten to 15 minutes. He said he could walk for five to ten minutes and could sit for ten to 15 minutes before needing to change positions. (Tr. 46.)
On an average day he reads and watches television. He also builds model cars, is able to dust his living room, and can drive short distances. (Tr. 42.) He prepares meals, takes the trash out, and shops. (Tr. 105.) Plaintiff also sometimes mows his lawn. (Tr. 115.) Since his injury, he is unable to drag race and care for his car. (Tr. 47.)
Additional evidence was submitted to the Appeals Council after the administrative hearing. On February 28, 1997, Raymond Tait, Ph.D., performed a behavioral consultation at the request of Tom Lieb, M.D. Dr. Tait noted that plaintiff was attempting to do auto repair work from his home but could only do this for 30 minutes at a time. Plaintiff's movements were guarded. Dr. Tait thought plaintiff should engage in multi-disciplinary treatment but was unable to do so because of "his location and his present financial status[.]" (Tr. 377-78.)
On March 18, 1997, Samuel Bernstein, Ph.D., evaluated plaintiff and his ability to work. Dr. Bernstein noted that plaintiff walked with a limp, favoring his left leg. Plaintiff stated he smokes a pack and a half of cigarettes a day. Plaintiff said he gets panic attacks daily. He stated he looked for work 23 times even though he did not believe he could work eight hours. (Tr. 379-80.) Plaintiff scored in the average range of intellectual functioning on the BETA II test. The Hamilton Inventory-Short Form indicated moderate to severe *679 depression. (Tr. 387.) Dr. Bernstein stated that the combination of plaintiff's injuries and depression made him unemployable in the open labor market. (Tr. 389.)
On August 11, 1997, Thomas Lieb, M.D., stated that plaintiff was being treated with narcotic medication for his pain. He agreed with a multi-disciplinary treatment plan and concluded that plaintiff's condition precludes him from returning to his previous employment. (Tr. 390.)

Discussion.
The determination that plaintiff is not disabled is founded upon the ALJ's finding that plaintiff has the residual functional capacity to perform his past work as a desk clerk. There is evidence that plaintiff can perform this work if he does not suffer the pain he testified to and alleged. And in this regard the ALJ discredited plaintiff's testimony and subjective complaints. In support of his motion for summary judgment, plaintiff argues, first, that the ALJ erred by not making express credibility findings. The Court agrees.
When a determination of whether or not a claimant is disabled under the Act depends upon the credibility of the claimant,[2] the ALJ must make clear and express findings of fact on the issue of credibility and give her reasons for discrediting of the testimony of the claimant. Jones v. Chater, 86 F.3d 823, 826 (8th Cir.1996); Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir.1991). In this regard, all the ALJ stated was that plaintiff's testimony was "not fully credible." (Tr. 17, 19.) The only expressed basis for this finding was the ALJ's statement that the medical evidence did not support the degree of impairment severity plaintiff described. (Tr. 17.) Without more, inconsistency with the medical evidence is an insufficient basis for discrediting a claimant. Jones, 86 F.3d at 826. The ALJ never expressed in her written opinion any consideration of the plaintiff's daily activities or any of the other factors (other than the medical evidence) set forth in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir.1984). It is not counsel's or the Court's prerogative to speculate on what the ALJ's findings would have been, and whether such findings would be supported by substantial evidence in the record, had the record been assessed and relevant findings made and stated in the written opinion.
As plaintiff argues, it is not solely the state of the administrative record that drives the Title II disability decision-making, but also the consideration given to the record by the ALJ. This action must be remanded to the Commissioner for further proceedings and the expression of specific findings and conclusions regarding plaintiff's credibility. In making such findings the ALJ must consider all of the evidence of the nonexertional factors in the record, including the evidence generated after the hearing before the ALJ.
Plaintiff argues that the ALJ erroneously found that plaintiff's work as a desk clerk qualified as past relevant work under the Act and that plaintiff could perform it. The Court agrees. Work is considered past relevant work when one has performed it within the last 15 years and has done the work long enough to learn the skills necessary to perform the work at a level of substantial gainful activity. 20 C.F.R. § 404.1565.
During the administrative hearing, plaintiff testified that his light duty job of desk clerk consisted of dock operations and coding bills and whatever else the employer wanted him to do. Plaintiff stated that he was able to perform the job, although he also said that sometimes pain forced him to leave work and his employer expressed a fear of further injury. (Tr. 44.) The record does not include a specific description of the characteristics of this *680 desk clerk position which plaintiff filled for two short periods of time. The Work Activity Report and the Disability Report filled out by plaintiff indicated that he did this work from June 9 to October 29, 1994, and from March 6 to June 14, 1995. (Tr. 90, 100.)
The record does not contain substantial evidence that plaintiff, at the time the ALJ rendered her opinion, was able to do this work. The precise characteristics of this work are not found in the record and the times plaintiff did this work predated his surgeries. Upon remand, the ALJ shall consider any further evidence offered on plaintiff's past relevant work and shall consider the opinion of a vocational expert concerning plaintiff's present ability to do that work. Cf., Haynes v. Shalala, 26 F.3d 812, 815 (8th Cir.1994).
Further, the Court notes that the ALJ never specifically identified the alleged impairment or impairments which the ALJ found severe. (Tr. 19.) The ALJ merely stated:
One or more of the claimant's impairments imposed significant limitations on his ability to function in the work place and he therefore has a "severe impairment" as that term is defined in the Regulations.
(Tr. 12.) It is incumbent upon the ALJ to identify the impairment or impairments believed to be severe to enable the Court to determine the presence of substantial evidence vel non as to whether such impairment(s) are disabling. If benefits are denied on remand, the ALJ shall specifically identify any severe impairment or impairments.
For these reasons, the decision of the Commissioner is reversed and the action is remanded to the Commissioner for further proceedings.

ORDER
In accordance with the Memorandum filed herewith,
IT IS HEREBY ORDERED that the motion of the defendant for summary judgment (Doc. No. 12) is denied.
IT IS FURTHER ORDERED that the motion of the plaintiff for summary judgment (Doc. No. 10) is sustained. The decision of the Commissioner of Social Security is reversed and the action is remanded to the Commissioner under Sentence 4 of 42 U.S.C. § 405(g) for further proceedings.
NOTES
[1] Under the Act, plaintiff must prove that he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment which would either result in death or which had lasted or could be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 423(d).
[2] The ALJ agreed that, if plaintiff's subjective complaints of pain were fully credible, he could not work at all. (Tr. 16.)