Joyce KOURIL, Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Appellee.

No. 89–5187MN.

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1990.

Decided Aug. 29, 1990.

Keith A. Dunder, Minneapolis, Minn., for appellant.

Gary A. Sultz, Chicago, Ill., for appellee.

Before McMILLIAN and ARNOLD, Circuit Judges, and FRIEDMAN,* Senior Circuit Judge.

ARNOLD, Circuit Judge.

This is a Social Security case. Joyce Kouril has a combination of ailments, most notably allergies to many common chemicals, that she says prevent her from working. The Secretary of Health and Human Services disagrees. After a hearing, an Administrative Law Judge found that though her health problems were serious, they would not prevent her from working as a key-punch operator—a job she held in the past. That administrative decision was affirmed after judicial review.

Mrs. Kouril appeals, and we reverse and remand the case. The ALJ erred in rejecting the conclusions of her treating physician, in failing to acknowledge the claimant's allergies in his findings, and in not adequately considering the combined effects of her health problems. A remand is necessary, however, despite the substantial evidence in the record as a whole supporting the conclusion that the appellant cannot perform her past work. That proven, the burden now shifts to the Secretary to prove that there is other work available that the claimant can do in spite of her health problems. The outcome of that factual inquiry will determine whether Mrs. Kouril is entitled to disability benefits.

## I.

Mrs. Kouril is forty-one years old, married, and the mother of two children. From the late 1960's until 1976, she worked in a variety of clerical jobs, including as a key-punch operator. In 1976 she began working for Medtronics, a company that makes pacemakers, in a similar position. A year later she was transferred (at her request) out of the office and onto Medtronics' assembly line. There she was exposed to the many chemical substances involved in the production of pacemakers: freon, acetone, alcohol, perma-bond, chem-grip, and a variety of other glues and solvents. In addition to the usual contact with these substances, the claimant was involved in several incidents of overexposure. On at

* The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

least one occasion in 1980, the ventilation system stopped working. On another occasion, protective equipment failed, and several employees, including the claimant, came in direct contact with the substances they were working with.

After these exposures, Kouril began having various reactions any time she came in contact with chemical substances. She describes, among others, the following symptoms: numbness in the legs, dizziness, light headedness and headaches, nausea, and various skin rashes and sores. There is no dispute that Kouril's sensitivity to noxious chemicals (such as those used at Medtronics), and her sensitivity to common chemicals and substances (such as ink and perfume), stem from her work putting together pacemakers. In 1983, Kouril received a workers' compensation award of $50,000 for those job-related injuries.

The appellant continued to work at Medtronics, but her increasing sensitivity to chemicals made it impossible for her to work in any aspect of production. She was transferred from job to job in hopes of finding an assembly task she could successfully complete without an adverse physical reaction, but to no avail. After returning to an office job, she was eventually fired in January of 1983. She lost her job because of her increasing sensitivity to her work environment; she was unable to tolerate even working on a part-time basis in the vicinity of the chemicals used at Medtronics. Mrs. Kouril has not been steadily employed since then. For approximately two months in 1985, she worked part-time as a clerk and typist at a company called Registry. She was, however, also unable to stay at that job. Her symptoms returned after exposure to the ink from the copying machine, the typewriter, and newly printed forms stored near her desk. The perfume of her co-workers also affected her. On the advice of her doctor, she left Registry as soon as it could hire a replacement.

Before she attempted to return to work, Mrs. Kouril filed an application for disability benefits. She dated her disability from January of 1983. She claimed that her exposure at Medtronics had made her aller-

gic to so many common chemicals that she was unable to work. Her condition, she alleged, made her unable to tolerate the work-place environment—any work-place environment with ink or perfume or tobacco smoke or any of the common substances she reacted to. Her application was denied, initially and on reconsideration. She requested and was granted a hearing before an ALJ. She and her husband were the only witnesses at the hearing. Her medical records were also submitted for consideration.

The ALJ held, in an opinion dated February 24, 1987, that Mrs. Kouril was not disabled. Using the familiar five-step analysis, 20 C.F.R. § 404.1520, he found that though serious, her health problems did not meet or equal a listed impairment, either alone or in combination. He further found that those problems would not prevent her from being a key-punch operator, a job she previously held. The Appeals Council refused to reconsider the ALJ's decision. On judicial review, a federal Magistrate agreed that the claimant was not disabled. The Magistrate's reasoning and conclusions were adopted by the District Court.

## II.

■ We focus on the ALJ's decision in this case. He erred in several respects and those errors led him to a mistaken conclusion. The ALJ improperly rejected the opinion of the claimant's treating physician. To do so he mischaracterized the appellant's day-to-day activities. The ALJ did address her allergies in the body of his opinion. But in spite of a record replete with evidence on this point, he made no finding on her sensitivity to ordinary chemicals—not noxious or extraordinary substances but substances common in the work-place. He also failed to consider explicitly the combined effects of the claimant's health problems. Substantial evidence in the record as a whole supports the conclusion that her allergic reactions to common substances (in combination with her other health problems) prevent her from working on a regular basis in the

work environments where she has been employed in the past.

Dr. George Kroker is the allergist who treated Mrs. Kouril for four years. His opinion is normally entitled to great weight. *Turpin v. Bowen,* 813 F.2d 165, 170–71 (8th Cir.1987). While acknowledging the possibility that a treating physician may lose objectivity in his efforts to help his patient, we nonetheless must depend, to some extent, on that doctor's familiarity with the claimant. Dr. Kroker's two summaries illuminate this claimant's allergic condition. One of these reports was prepared at the request of the Social Security hearing officer in 1985, and the other at the request of the claimant's lawyer in 1986.

Dr. Kroker's diagnosis is fourfold: environmental chemical sensitivity syndrome, candida hypersensitivity syndrome, premenstrual syndrome, and a mild dust and mold sensitivity. In layman's terms, Mrs. Kouril is allergic to many common substances—such as ink, perfume, tobacco smoke, photocopier odors, engine exhaust fumes, the odor of "new" products from carpet to clothes, and almost any substance containing hydrocarbons. She also suffers from recurring yeast infections and is slightly allergic to dust and mold. All these problems grow worse at the end of each menstrual cycle, and synergistically complicate each other.

Dr. Kroker concluded that Mrs. Kouril's "complex allergy state" required substantial restrictions in her daily activities. He prescribed medicine, an air purifier for her home, and advised that she avoid the many substances that trigger her allergic reactions. When her symptoms worsened after she began working at Registry, Dr. Kroker advised the appellant to stop working. His ultimate conclusion was that Mrs. Kouril's condition was "chronic." Moreover, Dr. Kroker concluded that the "ubiquity" of the substances in the work-place that generated an allergic reaction from her, meant that the claimant probably would never be able to work successfully.

The ALJ rejected Dr. Kroker's conclusions on the basis of his own observations, the other medical testimony, and the claimant's household activities. While relevant, the ALJ's observations are not entitled to the weight they seemingly carried in this case. For example, the fact that Mrs. Kouril did not note an adverse reaction to the ALJ's aftershave is ultimately inconsequential in light of all the other evidence. She in fact testified to having a headache during the hearing from the perfume of the receptionist she encountered before the hearing. And the ALJ seems to have ignored her uncontroverted testimony, supported by a doctor's report, that she left at least one job because of her allergic reaction to her co-workers' perfume.

The other medical evidence in this record supports rather than discredits Dr. Kroker's conclusions. Dr. Jean Eckerly, the other doctor treating the claimant on a regular basis, noted the claimant's sensitivities to common substances and specifically diagnosed her recurring yeast infections, her pre-menstrual syndrome, and the way in which all the claimant's health problems build upon one another. Furthermore, Dr. Eckerly explicitly qualified her conclusion, relied upon by the ALJ, that Mrs. Kouril was physically able to do light work. She noted that that capability was negated by the claimant's environmental sensitivity. Even the Secretary's own psychiatric expert confirmed Dr. Kroker's diagnosis of severe allergies. It is true that the reports of the claimant's medical progress show an ebb and flow of her symptoms over the years of treatment. The Secretary, however, does not contend that Mrs. Kouril's allergies are currently under control. And the varied but continuing nature of her symptoms supports, rather than detracts from, Dr. Kroker's diagnosis of chronic severe allergies.

■ The ALJ pointed to two other facts that undermined Dr. Kroker's conclusions in his mind: the claimant's lack of recurrent hospitalization, and her only recently received prescription for an oxygen tank, which she didn't bring to the hearing. This is an insufficient foundation for the ALJ's opinion of the claimant's condition. Mrs. Kouril has been hospitalized at least twice

for her health problems. Her near-sequestration in her bedroom (accompanied by her air purifier) to avoid irritating substances, also speaks to the depth of her allergies. As to the oxygen tank, Dr. Kroker prescribed it for the appellant's bedside in case of a severe delayed allergic reaction. It does not appear that the tank was intended to be carried about, or was a regular part of the claimant's treatment. The ALJ erred in making so much of such a tangential fact.

■ The Secretary notes one additional fact in his brief, which though not relied upon by the ALJ, we find troubling, and that arguably detracts from Dr. Kroker's final summary about the claimant's ability to work. His 1986 conclusions are more bleak, the Secretary points out, than his 1985 conclusions. The government's point is that here stands revealed the loss of objectivity to which treating physicians may succumb when their patients seek disability benefits. We, however, are unconvinced. There are, to be sure, differences in the two summary letters. But Dr. Kroker's 1985 diagnosis—the earlier summary—embodies the core of his conclusions. Most importantly, he had determined by then that Mrs. Kouril suffered from chronic and severe allergies. He noted there his advice that she stop "work [at Registry] due to chemical exposures" in that average office environment. The 1986 report (based on at least one subsequent office visit, and another year of ongoing complaints by the appellant) merely generalizes from these earlier particular conclusions. The ailments and allergies are the same, and so is the doctor's diagnosis. We cannot say that his expanded consideration of the claimant's capacity for work necessarily discredits his opinion. We are persuaded by Dr. Kroker's conclusions, at least in so far as they relate to Mrs. Kouril's ability to tolerate any of her past work environments.

The heart of the ALJ's reaction to Dr. Kroker's conclusions about the seriousness of the claimant's allergies lies in his view of the claimant's daily activities. At the hearing, Mrs. Kouril testified that she occasionally did household chores—cleaning, cooking, and vacuuming. She also stated that she usually went to church on Sunday. Mr. Kouril corroborated this testimony. The ALJ concluded that these activities belied her claims of heightened sensitivity to common chemicals. On this interpretation of the record, if the claimant could tolerate cleaning supplies, kitchen odors, and dirt, she could tolerate a common work-place environment. And her claims to the contrary, mistakenly believed by Dr. Kroker, thus appeared incredible.

It is, however, clear from the record that the ALJ misapprehended the testimony. Each time Mrs. Kouril noted that she sometimes cooked or made her bed, she qualified the statement by noting that it depended on how she felt. T. 76–77. Her husband noted that more often than not, household jobs just don't get done any more. As he put it, the housework "just sort of hangs." He also noted that their son had assumed the lion's share of day-to-day chores formerly done by Mrs. Kouril. T. 103. On those rare occasions when she does clean, on Dr. Kroker's recommendation it is only with certain kinds of cleaners that she can tolerate because of their lack of an odor. T. 150. When she does vacuum, the dust bothers her a great deal. Though she goes to church regularly, and socializes from time to time with one of several couples who understand and accommodate her allergies, this does not necessarily mean that she could tolerate traveling in traffic every day. There are important differences in kind and degree between these few activities and working "day in and day out in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc).

■ The Secretary's perception of Mrs. Kouril's lifestyle as only somewhat restricted by her allergies is mistaken. Too many relevant details—about how rarely she helps around the house, and the limiting conditions and adverse effects on her health of that help—must be ignored to conclude that her allergies are not severe, and that she could tolerate working in environments where she has worked before.

Disability does not require total incapacity. It requires that an individual be unable to engage in substantial gainful activity. 42 U.S.C. § 416(i)(1).

The claimant's recent—and without exception failed—efforts to return to the work-place are also important. She was forced to leave her job at Registry because of her allergic reaction to the ink and perfume present in that work environment. In addition, Mrs. Kouril recently attempted two courses, one in typing and the other in computer data entry. It is undisputed that because of her allergies she had to withdraw from both courses. She could not tolerate the ink from the typewriters, the smell of the hot computers, or the perfume of her classmates. These three efforts, and the work environments they entail, are nearly identical to the claimant's former job as a key-punch operator.

Finally, though the ALJ found that her health problems were not severe in combination, his decision reveals no consideration of the relevant evidence, or any analysis, that could justify that conclusion. Without exception the medical evidence supports the opposite conclusion. For example, Dr. Eckerly concluded that the claimant's health problems are compounded by their combination with one another.

### III.

We thus reject the finding that Mrs. Kouril has some serious but not debilitating health problems. She suffers from severe and chronic allergies, as diagnosed by Dr. Kroker and confirmed by Dr. Eckerly. Her testimony and that of her husband demonstrate that the symptoms she experiences after exposure to any of those common (not just toxic or noxious) chemicals, severely restrict her day-to-day activities. The combined and synergistic effects of those allergies to common chemicals, her

recurring yeast infections, her pre-menstrual syndrome, and her mild allergy to dust and mold, prevent her from working at any of her previous jobs.[1]

Though substantial evidence in the record as a whole supports our holding that Mrs. Kouril cannot return to any of her former jobs, that evidence does not necessarily demonstrate that she is disabled. The burden now shifts to the Secretary to prove that available work—work that Mrs. Kouril can perform in spite of her health problems—exists. 20 C.F.R. § 404.1520(f). Because the ALJ rejected the appellant's claims at an earlier stage of the analysis, the Secretary has had no opportunity to meet this burden. On this record, we are not prepared to say that there is *no* job Mrs. Kouril could perform considering her health problems, her age, and her education. Though Dr. Kroker concluded that she has a "complete inability to be in contact with common work-place materials," this does not resolve the question of available work. There may be some jobs that she is capable of doing where the work-place environment does not contain any of the substances and chemicals and smells to which she reacts adversely. While it may be that Dr. Kroker is correct that it is "practically impossible" for Mrs. Kouril to function in the working world (and thus that she is statutorily disabled), he could be mistaken. By regulation the Secretary is guaranteed the opportunity to demonstrate that this possibility is a reality.

Therefore, we remand this case to the District Court, with directions to remand it to the Secretary for a determination on the availability of other work. We express no view on the answer to that question; the facts are for the ALJ to find based on the evidence before him. However, the claimant's physical condition and the limitations it brings—as diagnosed by Dr. Kroker and

---

1. We leave to the side Mrs. Kouril's problems with depression. The evaluations of the Secretary's psychiatrist, Dr. Blackmore, and Dr. Beniak, a privately retained doctor, demonstrate that the claimant suffers from at least major depression. The ALJ agreed, but found this problem to be insignificant. Both doctors connect these emotional difficulties with the greatly restricted lifestyle brought on by Mrs. Kouril's allergies. Given that her combined physical maladies prevent her from returning to any job she held in the past, and that whatever emotional problems she has stem from her physical limitations, we find it unnecessary to address separately the impact of her psychological difficulties.

Dr. Eckerly and described by the claimant—are closed questions. Mrs. Kouril's combination of allergies and ailments is the limiting condition that must guide the remaining inquiry.

It is so ordered.