**Derra L. Hamm NEELY, Social Security No. 450–13–9707, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

No. 92–2986.

United States Court of Appeals, Eighth Circuit.

Submitted March 19, 1993.

Decided July 2, 1993.

James Schulze, Little Rock, AR, argued for plaintiff-appellant.

Pamela M. Wood, Dallas, TX, argued for defendant-appellee.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and STOHR,* District Judge.

JOHN R. GIBSON, Circuit Judge.

Derra L. Hamm Neely appeals from the district court's order affirming the Secretary of Health and Human Services'[1] decision to deny her benefits under Title II of the Social Security Act. Neely argues that the Secretary's decision is not supported by substantial evidence, and that the administrative law judge erred in disregarding a vocational expert's testimony. We conclude that the ALJ erred in rejecting Neely's complaints of pain and in applying the Medical–Vocational Guidelines. Accordingly, we reverse and remand for further proceedings.

In 1981, Neely injured her back and underwent three lumbar disc surgeries, including a lumbar disc fusion. She recovered from these surgeries without incident. In June 1988, Neely was involved in an automobile accident which broke the fusion. She had surgery to repair the fusion, but continues to complain of chronic pain and significantly restricted motion.

The Secretary rejected her claim on December 1, 1989, and Neely appealed. At a hearing before an ALJ, Neely testified that she had pain in her lower back and hip and down her left leg. She testified that she can stand for only fifteen minutes, she must bend over cautiously, she has difficulty walking and sitting, she can comfortably lift only things like pots and pans, the pain is worse when she gets off balance, and she does not sleep well. She testified that she has not had a day without pain since the surgery, and the pain is either severe or bad.

Neely's husband testified that Neely does not sleep well, and has been in great pain since the accident. He stated that Neely jerks while she is asleep, walks slowly, looks uncomfortable when sitting, and asks him to slow down for curves when he is driving so the car will not shift her weight. He testified that Neely cannot do the things she once did, and has tried to push herself "to the limits and beyond."

A vocational expert, Bob White, also testified for Neely at the hearing. When Neely's attorney posed a hypothetical to determine whether there were any jobs Neely could perform, White responded that "there would not be any ... light duty or even sedentary jobs for which Ms. Neely could compete." Neely also submitted other evidence, including medical reports, transcripts from depositions with her doctors, and a report prepared by White.

The ALJ found that Neely had a "severe impairment," but one that did not meet or equal the requirements of the listings. The ALJ then evaluated Neely's residual functional capacity and found that, by at least March 1, 1989, Neely had regained the capacity to perform the full range of sedentary work. Given this capacity finding, the ALJ determined that Neely could not perform her past relevant work. The ALJ then shifted the burden to the Secretary to prove that jobs which Neely could perform existed in substantial numbers in the national economy. Accordingly, the ALJ consulted the Medical–Vocational Guidelines and determined that considering Neely's age, education, and work experience, the guidelines mandated a finding of not disabled.

* The HONORABLE DONALD J. STOHR, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. Donna E. Shalala replaced Louis W. Sullivan, M.D., as the Secretary of Health and Human Services on January 22, 1993.

In determining Neely's residual capacity to perform sedentary work, the ALJ considered and rejected Neely's complaints of pain. Although Neely claimed she was in constant severe or bad pain, the ALJ found no objective evidence supporting pain of that severity. The ALJ then applied *Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir.1984), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). The ALJ discredited Neely's "subjective" complaints because she cared for her baby, she was not under a physician's care or taking pain medication at the time of the hearing, she had a fair work record, her doctor had advised her to adjust her lifestyle but did not say she was disabled, and she occasionally went "deer hunting which does involve considerable exertion." The ALJ also discounted Neely's husband's testimony about the nature of Neely's pain even though the ALJ thought her husband was "sincere." In addition, the ALJ gave little weight to White's vocational report and rejected his testimony regarding Neely's ability to work even though the ALJ thought White's conclusions were reasonable.

The Appeals Council denied Neely's request for review, and Neely filed this suit in the district court. The district court granted the Secretary's motion for summary judgment, and Neely appealed.

Neely argues that the ALJ's decision is not supported by substantial evidence. More specifically, Neely points to objective medical evidence supporting her complaints of pain, argues that the ALJ improperly discredited her husband's testimony, and contends that the ALJ erred in applying the Medical–Vocational Guidelines.

█ On appeal, we must determine whether substantial evidence on the record as a whole supports the Secretary's decision. *Sobania v. Secretary of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir.1989). "Substantial evidence" means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct.

1420, 1427, 28 L.Ed.2d 842 (1971). "This review implicates more than a mere search for evidence supporting the Secretary's decision; a reviewing court must also take into account evidence which detracts from the Secretary's determination, ... and apply a balancing test to weigh evidence which is contradictory." *Sobania*, 879 F.2d at 444 (citations omitted).

█ After carefully reviewing the record, we conclude that the substantial evidence does not support the ALJ's finding that there was no objective medical evidence supporting the severity of Neely's pain. Neely has a significant history of complicated back problems, including surgery to repair an earlier fusion which had cracked. Following her 1988 car accident, Neely consistently complained of pain in her back and radiating down her left leg. The day after the accident, Dr. Storeygard, Neely's personal physician, recorded that her back was hurting and she was "having some radicular symptoms down the left lateral calf." She received physical therapy, but continued to have a great deal of pain. She then saw Dr. Ray Jouett, a neurosurgeon, who became concerned about a possible lumbar nerve root compression. Following a "CT scan," the doctors concluded that Neely's earlier fusion had split. On September 19, 1988, Dr. Charles Schock, an orthopedic surgeon, operated to repair the fusion. He inserted Harrington rods and a bone growth stimulator.

On November 2, 1988, Dr. Schock reported that Neely had less pain, but had an intermittent burning sensation toward the left side of the incision. On January 11, 1989, Dr. Schock reported that Neely continued to have pain similar to what she had experienced before the surgery, radiating to her lower extremities. He decided to remove the bone growth stimulator and explore the fusion. The stimulator was removed on February 2, 1989.

On March 1, 1989, Dr. Schock wrote that Neely was doing better than preoperatively, but still had trouble with soreness and an inability to sleep. On June 6, 1989, Dr. Schock stated that although Neely felt better than she had preoperatively, she still had a

nagging pain in her left buttock and postlateral thigh. He considered removing her Harrington rods and installing a Medtronic spinal stimulator. On July 12, 1989, Dr. Schock observed that Neely was doing much better and wanted the Harrington rods removed, but still had some intermittent pain into the left leg. On July 25, 1989, Dr. Schock removed the Harrington rods.

That same month, Dr. Storeygard specifically noted in his records that Neely had "been *disabled* since the motor vehicle accident of 6-29-88." (emphasis added). Similarly, in an insurance company's "Attending Physician's Statement," Dr. Storeygard reported that Neely had been "disabled" since June 1988 and that she was taking pain medication.

On August 4, 1989, Dr. Schock stated that Neely continued to complain of neuritic type pains in the left buttock and leg, and concluded that if the pain did not subside she might be a candidate for a dorsal column stimulator implantation. He then added another pain medication to her "regiment." On September 8, 1989, Dr. Schock observed that Neely was continuing to have neuritic type pain in the left buttock even with the use of her pain medication. Dr. Schock discontinued the medication, and determined that it was "medically necessary" for her to undergo further diagnostic tests and to be considered for a stimulator implantation.

On November 1, 1989, Neely returned to Dr. Schock, who found the fusion in good condition, but also found evidence of epidural fibrosis at a left nerve root. On December 15, 1989, Dr. Schock reported that Neely continued to have pain in the left leg, which he suggested was probably associated with neural fibrosis on the left. He stated that she could do some outdoor activities such as deer hunting, but could not exert herself the way she use to and would need to adjust her lifestyle accordingly. He stated that the implantation procedure would not be considered because Neely was not insured and had not responded well to the earlier external stimu-lator. He continued her prescriptions for two pain medications for use as needed.

On January 12, 1990, Dr. Schock wrote to Neely's attorney, stating that Neely was experiencing pain on a "chronic basis," which was "very likely secondary to some arachnoiditis at the site of her previous operative procedures." He stated that there was a "chronic pain syndrome element to her complaints," but at the same time there was *"an objective reason for the pain* in the way of arachnoiditis." (emphasis added). He again suggested the implantation procedure and indicated that other patients with similar problems had some success with the procedure.

At a deposition, Dr. Storeygard opined that Neely's condition was painful and that she would very likely continue to have back problems in the future. Dr. Schock testified that Neely's back pain was typical of "pseudarthrosis," and her leg pain was typical of "epiduralfibrosis." He also stated that Neely would probably continue to have some degree of pain in the future and some physical limitation or impairment. Similarly, Dr. Jouett testified that Neely was continuing to have pain in October 1989, and if the pain did not get better, she would have a permanent impairment.

Finally, a clinical psychologist, Dr. Kenneth Counts, met with Neely and administered several psychological tests on May 7, 1990. He reported that Neely complained of various problems, including back pain and sleep disturbance. He stated that based on the psychological test results,[2] he was confident that Neely suffered from "Chronic Pain Syndrome."

We find no substantial evidence in this record refuting Neely's claims of pain. No one indicated that Neely's pain was anything but as she described it. To the contrary, Neely's doctors contemplated another surgical procedure to help alleviate the pain, Dr. Storeygard specifically stated that Neely was disabled, and Dr. Schock identified an objective reason for her pain.

---

**2.** Neither the actual test results nor Dr. Counts' summary of those results is included in the record before us. The record contains only a letter from Dr. Counts, stating his conclusions and referring to the other documents.

We also observe that Neely's testimony and the reports she completed for her social security claim are consistent with the symptoms she reported to her treating physicians and the medical problems she experienced. Although credibility determinations are for the factfinder, the objective medical evidence supports Neely's complaints and cannot be disregarded.

Further, Neely's husband's testimony is consistent with her claims and the record as a whole, and it does not appear to be based primarily on Neely's descriptions of her pain, but rather on his own observations of how she functions on a daily basis. Contrary to the ALJ's finding of "sincerity," the ALJ decided that Neely's husband's testimony merited limited weight because it might "be influenced by sympathy for the claimant and by the claimant's own statements regarding her limitations." In *Ludden v. Bowen*, 888 F.2d 1246, 1248 (8th Cir.1989), we held that an ALJ had not sufficiently identified any discrepancies in a spouse's testimony by summarily stating that "individuals at hearings are more likely to present themselves, or their loved ones, in the light most favorable to benefit awarding." Similarly, the ALJ here failed to point out any discrepancies in Neely's husband's testimony, and thus, should not have discounted it.[3]

After the ALJ discredited Neely's complaints of pain, he applied the Medical–Vocational Guidelines to determine if there were jobs available in the national economy for a person with her limitations. Having determined that the ALJ should not have discredited Neely's complaints of pain, we conclude that the ALJ's reliance on the guidelines was erroneous. *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir.1982) (en banc).

Once a claimant has established an inability to return to her past relevant work, the burden shifts to the Secretary to present evidence showing the availability of other jobs in the national economy that the claimant could perform. *Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 586 (8th Cir.1992). In the case of a solely exertional impairment, the Secretary may meet this burden by reference to the guidelines. *Id.;* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00 (1992); *see also McCoy*, 683 F.2d at 1148. When the record indicates that the claimant has a nonexertional impairment such as pain, however, the Secretary must use vocational expert testimony or other similar evidence to meet the burden. 20 C.F.R. § 404.1569 (1992); 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); *Kirksey v. Heckler*, 808 F.2d 690, 692–94 (8th Cir.1987); *see also Stewart*, 957 F.2d at 586. Because Neely has a nonexertional impairment, the ALJ should not have applied the guidelines.

Accordingly, Neely argues that the ALJ erred in rejecting the testimony of her vocational expert, White. Although the ALJ accepted the reasonableness of White's conclusion that an individual with moderately severe pain could not perform substantial gainful activity on a sustained basis, the ALJ rejected the expert's opinion because the ALJ did not believe Neely's complaints were sufficiently severe to preclude sedentary work.[4] We have concluded, however, that

---

3. Although Neely disputes many of the ALJ's other conclusions, we need not address them in detail as we have found substantial objective medical evidence supporting Neely's claims of pain. We reiterate, however, that an ALJ has a duty to develop the facts fully and fairly. *Prince v. Bowen*, 894 F.2d 283, 286 (8th Cir.1990); *Miller v. Sullivan*, 953 F.2d 417, 422 (8th Cir.1992). Here, in rejecting Neely's claims, the ALJ relied on the "considerable exertion" required for deer hunting and the "daily" care Neely provides for her baby. The record, however, does not indicate what amount of exertion is required for deer hunting or how often Neely engaged in such activities. Instead, the record contains only one reference to deer hunting and numerous references to the help Neely required in caring for her baby (in-laws, babysitters). Similarly, the ALJ did not fully develop Neely's history with pain medication, her current decision not to take prescription medication (based on her doctor's advice), her reasons for not seeking further specialized care, or Dr. Schock and Dr. Counts' references to chronic pain syndrome.

4. In addition, the ALJ gave little weight to White's report because the "report was prepared for other litigation, and the conclusions reached were largely based on the claimant's statements regarding her subjective complaints." We observe that White's report contains an extensive discussion of Neely's medical history and does not rely primarily on Neely's statements. Thus, the ALJ's findings are contrary to the evidence.

the ALJ's rejection of Neely's complaints is not supported by substantial evidence. Therefore, the ALJ must look to a vocational expert to determine whether Neely can perform sedentary work "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy,* 683 F.2d at 1147.

We remand to the district court with directions to remand to the Secretary. The Secretary may then award benefits or remand to the ALJ for an additional evidentiary hearing consistent with this opinion.