# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2055

_____

Karen Hutton,                                          *
                                                       *
            Appellant,                                 *
                                                       *     Appeal from the United States
      v.                                               *     District Court for the
                                                       *     Eastern District of Arkansas.
Kenneth S. Apfel, Commissioner,                        *
Social Security Administration,                        *
                                                       *
            Appellee.                                  *

_____

Submitted:  December 16, 1998

Filed:  May 5, 1999

_____

Before FAGG, HEANEY, and WOLLMAN,[1] Circuit Judges.

_____

WOLLMAN, Chief Judge.

Karen Hutton appeals from the district court's[2] judgment affirming the denial of her application for social security disability benefits under Title II of the Social Security

---

[1]The Honorable Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]The Honorable Henry Jones, United States Magistrate Judge for the Eastern District of Arkansas, to whom the case was submitted pursuant to the consent of the parties under 28 U.S.C. § 636(3).

Act, 42 U.S.C. §§ 216(i) and 223, and supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1602 and 1614(a)(3)(A). We affirm.

**I.**

Hutton, who was born on January 30, 1964, has a high-school education. Her past relevant work includes work as an assembler, stainer, molder, and spot welder. Hutton filed an application for disability insurance benefits and supplemental security income on April 1, 1992. She alleged a disability onset date of January 13, 1992, claiming that she was unable to work due to Hodgkin's disease and the secondary effects of chemotherapy.

The Social Security Administration denied Hutton's application initially and again on reconsideration. On September 27, 1995, the district court remanded her case for consideration of additional evidence. A second hearing was held before an Administrative Law Judge (ALJ) on April 11, 1996.

The ALJ evaluated Hutton's claim according to the five-step analysis prescribed by the Social Security Regulations. See 20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process). He determined that Hutton had severe impairments, including neuropathy and fibromyalgia, but that she did not have an impairment or combination of impairments listed in the regulations. See Appendix 1, Subpart P, Regulations No. 4. The ALJ discredited her subjective complaints of pain, finding that they were inconsistent with the overall record. At step four, the ALJ concluded that Hutton was not capable of performing her past relevant work as a welder. At step five, the ALJ found that Hutton could perform a full range of sedentary work with the following restrictions: no jobs requiring foot controls, requiring work at heights, around moving hazardous machinery, involving the operation of automotive equipment, or jobs requiring continuous fine dexterous movements of either hand. Accordingly, the ALJ denied Hutton's claim.

The Appeals Council denied Hutton's request for further review, and the ALJ's decision thereby became the final decision of the Commissioner. Hutton subsequently appealed to the district court pursuant to 42 U.S.C. § 405(g). The district court granted the Commissioner's motion for summary judgment, finding that substantial evidence supported the Commissioner's decision.

**II.**

We will uphold the Commissioner's determinations if they are supported by substantial evidence in the record as a whole. See Spradling v Chater, 126 F.3d 1072, 1073-74 (8th Cir. 1997). Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion. See Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993). In determining whether the existing evidence is substantial, "we must consider evidence that detracts from the [Commissioner's] decision as well as evidence that supports it." Id. We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. See Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993).

Hutton contends that debilitating pain prevents her from working and that the ALJ improperly discounted her subjective complaints. "As is true in many disability cases, there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." Spradling, 126 F.3d at 1074 (quoting Woolf, 3 F.3d at 1213). The ALJ concluded that Hutton's subjective complaints of pain were not supported by the evidence and not credible to the extent alleged.

In order to properly evaluate a claimant's subjective complaints of pain, the ALJ is required to make a credibility determination by taking into account the following factors: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the dosage, effectiveness, and side effects of medication; (4) precipitating

and aggravating factors; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted). Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints. See id. The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole. See Spradling, 126 F.3d at 1075.

The record supports the ALJ's determination that Hutton's subjective complaints of disabling pain were not credible to the extent alleged. William E. Wilkins, Ph.D., a specialist in neuroclinical and forensic psychology, to whom Hutton was referred by her attorney, opined that Hutton's symptoms were a result of psychological rather than physical distress. Hutton testified that her daily activities included making breakfast, washing dishes, washing clothes, visiting with friends, watching television, and driving an automobile. The ALJ noted that Hutton's daily activities were inconsistent with a claim of total disability. See Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1995); Nguyen v. Chater, 75 F.3d 429 (8th Cir. 1995); Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995). The ALJ also found that no doctor had placed Hutton on any physical restrictions or advised that she participate in physical therapy. The lack of physical restrictions militates against a finding of total disability. See Smith, 987 F.2d at 1374. The ALJ further noted that Hutton's work history indicated a lack of motivation to return to work activity. See Woolf, 3 F.3d at 1214 (stating that a claimant's credibility is lessened by a poor work history).

Hutton argues that she is disabled because of pain related to fibromyalgia. See Cline v. Sullivan, 939 F.2d 560, 567-68 (8th Cir. 1991) (recognizing that fibromyalgia can be disabling). We disagree. The evidence shows that Hutton received seventy-five trigger point injections over a two year period. She testified that the trigger point injections relieved the pain and "made the knots go down." Impairments that are controllable or amenable to treatment do not support a finding of total disability. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997); but cf. Kelley v. Callahan, 133

-4-

F.3d 583, 589 (8th Cir. 1998) (noting that trigger point injections may provide substantial evidence to support a finding of disability due to fibromyalgia). Accordingly, the evidence as a whole supports the ALJ's conclusion that Hutton's testimony was credible to the extent that it establishes that she has some pain, but not to the extent that it would support her claim that she cannot perform any type of work. See Woolf, 3 F.3d at 1214.

Hutton also argues that the ALJ failed to consider the effects of somatoform pain disorder, a mental disorder that causes a belief that physical ailments are more serious than the clinical data would suggest. See Merck Manual 1590-91 (16th ed. 1992). There is little or no objective medical evidence to support a finding of total disability based on Hutton's mental impairments, however. The ALJ found that she had failed to maintain a consistent treatment pattern for her alleged mental impairments and that her daily activities were not indicative of one suffering from a severe mental impairment, findings that we conclude are supported by substantial evidence in the record.

Because the ALJ found that Hutton cannot perform her past relevant work, the burden shifted to the Commissioner to prove that a significant number of jobs existed in the regional economy that Hutton was capable of performing. To meet this burden, the ALJ called as a witness a vocational expert, asking the expert to consider a hypothetical individual of Hutton's age, education, and past work experience with a history of Hodgkin's disease, residual neuropathy due to chemotherapy, and myalgia of unknown origin, all of which produce the following limitations: "the inability to perform prolonged standing or walking, no lifting or carrying more than ten pounds on an occasional basis, no jobs requiring foot controls, no jobs requiring work at heights, around hazardous machinery, or involving automotive equipment, and no jobs requiring continuous fine dexterous movements of either hand." Admin. Tr. at 427-28. The vocational expert responded that such an individual could perform the work of a cashier, of which approximately 8,000 jobs were located in Arkansas.

"Testimony from a VE based on a properly-phrased hypothetical question constitutes substantial evidence." Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996). A proper hypothetical question presents to the vocational expert a set of limitations that mirror those of the claimant. See id. at 676. Hutton contends that the ALJ's hypothetical question failed to state precisely her physical limitations. She argues that the medical evidence indicates that she is prevented from performing any fine dexterous hand movements, rather than from only those tasks requiring continuous fine dexterous hand movements. Although Dr. Scroggin and Dr. Hughes, two of her treating physicians, indicated that Hutton's ability to perform fine manipulation was restricted, the ALJ found that their opinions were highly inconsistent with the objective medical evidence, especially as to the extent of the limitations alleged.

The ALJ gave greater weight to the opinion of Dr. Peggy Brown, a board certified member of the American Academy of Neurological and Orthopedic Medicine and Surgery, who examined Hutton at the request of the Social Security Administration. Although Dr. Brown's sensory examination revealed "Decreased to light touch, pin and temperature distally, mainly in her feet, but to some degree in her hands," Dr. Brown reported that she could not "make any judgment on [Hutton's] motor strength because her effort was so poor and inconsistent throughout [the] examination." Dr. Brown noted that "Ms. Hutton is taking a very unusual combination of multiple medications," (eight in number by our count) and that "I think at least some of what I am seeing is side effects of medication today." Dr. Brown continued by reporting,

> I think her main problem today is that she needs to be detoxified from all of these drugs and she may need to go to an inpatient setting to do that. She may have fibromyalgia. She probably has a sensory neuropathy secondary to the vincristine. Those do take months to resolve. I do note that she has had return of her reflexes, which were previously documented as absent, so that is a positive sign indicating that she has had some recovery.

-6-

In addition to Dr. Brown's observations, Dr. Wilkins found, after subjecting her to a finger tapping test (as well as to a number of other tests), that Hutton's finger tapping scores "were approximately 2 standard deviations above the average. [Hutton's] grip strength is about 2 standard deviations below the average on both the right and left hand. We see a reduction in general gross motor strength but no reduction in fine motor skills."

As noted earlier, Dr. Wilkins was of the opinion that Hutton's symptoms were the result of psychological rather than physical distress. He recounted at some length the relationship between Hutton's psychological makeup and her physical complaints, noting that persons with her makeup "evidence multiple physical complaints. A wide variety of physical symptomology is apt to be presented including back pain, headaches, gastrointestinal difficulties, numbness, tremors, etc."

It was for the ALJ to resolve conflicts in the evidence and to decide which evidence was best supported by the record. See Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1994). We conclude that the ALJ's finding that Hutton was restricted from only those sedentary jobs that require continuous fine dexterous movement of either hand finds support in the record and that his decision that Hutton is not disabled is thus supported by substantial evidence in the record as a whole.

The judgment is affirmed.

HEANEY, Circuit Judge, dissenting.

I have no alternative but to dissent. The ALJ not only ignored the law of this circuit, but misstated the facts in several important respects.

<u>Ms. Hutton's Daily Activities</u>

The ALJ stated that Hutton's daily activities were certainly indicative of an individual who is not completely unable to work, and for that reason held that her testimony relating to her inability to work was not credible. This court, the district court, and the ALJs in this circuit are bound by the en banc decision of this court in <u>McCoy v. Schweiker</u>, 683 F.2d 1138 (8th Cir. 1982) (en banc). There we stated that the ability to do sedentary work "is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." <u>Id.</u> at 1147. We reiterated this standard in <u>Thomas v. Sullivan</u>, 876 F.2d 666, 669 (8th Cir. 1989), where we said: "The ability to do light housework with assistance, attend church, or visit with friends on the phone does not qualify as the ability to do substantial gainful activity." This standard has correctly been applied by this court in numerous other cases. <u>See, e.g.</u>, <u>Wilcutts v. Apfel</u>, 143 F.3d 1134, 1137 (8th Cir 1998); <u>Ingram v. Chater</u>, 107 F.3d 598, 604 (8th Cir. 1997); <u>Rainey v. Department of Health & Human Servs.</u>, 48 F.3d 292, 293 (8th Cir. 1995); <u>Neely v. Shalala</u>, 997 F.2d 437, 442 (8th Cir. 1993); <u>Cline v. Sullivan</u>, 939 F.2d 560, 566 (8th Cir. 1991); <u>Kouril v. Bowen</u>, 912 F.2d 971, 975 (8th Cir. 1993); <u>Easter v. Bowen</u>, 867 F.2d 1128, 1130 (8th Cir. 1989). Notwithstanding our en banc opinion, ALJs in this circuit continue to ignore the teachings of <u>McCoy</u> and its progeny. We should not permit this.

I must admit that one can find cases in this circuit that ignore <u>McCoy</u>, and the majority has found three of them, but I cannot ignore an en banc decision of this court. Obviously there are cases in which daily activities are such that they clearly demonstrate a claimant's ability to work full time in our competitive economy, but this is not one. Moreover, contrary to our statement in <u>Hall v. Chater</u>, 62 F.3d 220, 223 (8th Cir. 1995), that "[w]hen making a determination based on [daily activities] to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony," the ALJ simply listed the claimant's daily

activities and failed to explain how or why they show that claimant can perform a full-time job on a continuing and sustained basis.

To make matters worse, the ALJ does not describe accurately Hutton's daily activities. She and her daughter live alone. She fixes breakfast for her 14-year-old daughter and does the dishes with her daughter. The daughter does the dusting, Hutton washes clothes, which are hung out to dry by both. Hutton watches the news for about a half hour, listens to the radio, and walks around the house. She has no hobbies, she drives infrequently, she visits her mother if her mother picks her up, and goes to church if she gets a ride. Someone else mows the lawn and tends the flowers. Hutton can walk one-half block and sit for one-half hour and has problems with concentration. This is hardly the portrait of someone who can hold down a full-time job.

## The Hypothetical Posed by the ALJ

We have consistently held that questions posed to a vocational expert should set out precisely the claimant's physical and mental impairments. "If a hypothetical question does not include all of the claimant's impairments, limitations, and restrictions, or it is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Cox v. Apfel, 160 F.3d 1203, 1207 (8th Cir. 1998); see Smith v. Shalala, 31 F.3d 715, 717 (8th Cir. 1994); Totz v. Sullivan, 961 F.2d 727, 730 (8th Cir. 1992); Greene v. Sullivan, 923 F.2d 99, 101 (8th Cir.1991).

The hypothetical posed violated the precept established in these cases. First, it failed to state that Hutton could only sit for one-half hour. The evidence of this condition is uncontroverted. As social security regulations provide that sedentary work involves sitting most of the time, 20 C.F.R. § 404.1567(a) (1998), the failure to include any statement as to her ability to sit for a limited period means that the hypothetical does not meet minimum standards.

Second, the hypothetical with respect to Hutton's ability to perform repetitive, fine hand movement, whether occasionally or frequently, is hopelessly confusing. At the risk of lengthening this dissent, I quote the full colloquy:

Q (by ALJ) Well, let me ask you a hypothetical question, Dr. Sales, to please assume an individual of the claimant's age and education as indicate[d] in the record; with the work experiences you just described; who has a history of Hodgkin's disease which is currently in remission but who does have residual neuropathy do [sic] to the chemotherapy and residual myalgia of unknown origin, all of which produce the following limitations[:] the individual is unable to do any prolonged standing or walking; no lifting and carrying of more than ten pounds on an occasional basis; no jobs requiring operation of foot controls; no jobs requiring work at heights or around moving hazardous machinery or where required to operate automotive equipment; and no jobs requiring continuous fine dexterous movements of either hand; I'll be happy to repeat those. I see you're taking notes.

A Yeah, I think I have it.

Q With those limitations, would the individual be able to return to the past relevant work you described?

A No, sir, she would not.

Q With those limitations, would there be any other jobs in the economy, either unskilled or semi-skilled, using transferable skills, that that individual could perform?

A Not using transferable skills.

Q Okay. Would there be any unskilled jobs which an individual with those limitations could perform?

A Well, the first thing that comes to mind would be in an entirely different area. Entry level work for an individual working as a cashier,

-10-

again, there's some in Arkansas, around 1992, some -- and through '94, some 20,000 such people, 40 percent of 8000 of those are rated sedentary, which would mean that in that case, she could sit or stand, the lift would be occasional ten pounds or less. She would have to use her hands and fingers, obviously, to make transactions, but it's not considered nor defined as continuous fine dexterity.

Q  If the limitation were on <u>frequent fine</u> dexterous movements of the hands, would that restrict her from doing that job as a cashier?

A  Frequent fine --

Q  Frequent to fine is I guess anywhere from one-third to two-thirds on work day?

A  -- well, fine dexterity I think is one notch more sophisticated than work of a cashier, hence, it would possibly leave her within the rhelm [sic] of that work activity in my judgment. . .

Q (by attorney)  [I]f the person were unable to use occasional use of fine dexterity, would that make a difference or is the difference fine dexterity?

A  That is one of the difference, the frequency, of course, would have an impact on that.

Q  Would there be a cashier job open for somebody who could not use only less than one-third, which I guess is the occasional use of fine dexterity, use of hands?

A If she could use it less than a third?

Q  Yeah, I believe that's --

A  During the day.  I would, yes, because she would have to use it throughout the day at various periods of times, where it would add up to one-third of the time.

Q  [W]ould there be any jobs for such a person that could not use the occasional use of fine dexterity?

A  Occasional -- with all other factors in the hypothetical there?

Q  Yes, please.

A  . . . I think it would be very difficult.

(Admin. Tr. at 427-30) (emphasis added).

Certainly an ALJ can insist that vocational experts be more exacting than this. The vocational expert seems to be saying that if there is a need to use fine dexterous movements frequently or occasionally, that Hutton would not be able to perform a cashier's job.  If only occasionally, then she would be able to, but his meaning is unclear.  Moreover, there is no evidence in the record that Hutton can perform the numerous duties of a cashier.[3]

### The Medical Evidence

The ALJ concedes that Hutton's treating physicians have stated on several occasions that she is disabled.  He also concedes that great weight should be given to their opinions, but promptly proceeds to disregard them, saying that he has given greater weight to the opinion of Dr. Peggy Brown, retained by the Social Security Administration.  Not only did the ALJ err in disregarding the opinions of Ms. Hutton's treating physicians because "[t]he opinion of a treating physician is entitled to great

---

[3]The Dictionary of Occupational Titles lists the ability to operate office machines such as a typewriter, computer, and adding, calculating, bookkeeping, and check-writing machines as a requirement for a clerical cashier.  This job description also requires the ability to prepare collection, disbursement, and bank-reconciliation reports.  See 1 Dictionary of Occupational Titles § 211.362-010, at 183 (rev. 4th ed. 1991) (defining requisite abilities for position of Cashier I).

weight 'unless it is unsupported by medically acceptable clinical or diagnostic data,'" Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991) (quoting Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir.1991)), but he also erred in holding that Dr. Brown reported Hutton was not disabled on the date of her examination three years after the onset of Hodgkins disease. In fact, Dr. Brown reported:

> [H]er neurologic exam reveals possibly a sensory neuropathy. . . .
>
> . . . [W]hat I am seeing is side effects of medication today. She has very marked nystagmus, [this is defined as an involuntary, rapid, rhythmic movement of the eyeball which may be horizontal, vertical, rotational or mixed] probably due to the narcotics or the Dilantin. . . .
>
> . . . [H]er main problem today is that she needs to be detoxified from all of these drugs and she may need to go to an inpatient setting to do that. She may have fibromyalgia. She probably has a sensory neuropathy secondary to the vincristine. Those do take months to resolve. . . . This lady probably should go back to her internist or oncologist to have her medications changed or adjusted and she may, if she is having that much difficulty with pain probably should be seen in a chronic pain clinic or even admitted for detoxification.

(Admin. Tr. at 627.)

The only conclusion that one can draw from Dr. Brown's report is that Hutton was disabled on December 7, 1995, and that she would continue to be disabled for the several months that it would take to detoxify and otherwise prepare her for a return to work. Notably, Dr. Brown recommends that she return to the internist who had been treating her for several years. Certainly, I have no quarrel with Dr. Brown's recommendations, but there is absolutely nothing in this record to indicate that Hutton has not been following her physicians' advice all along or that she will not do so in the future. Based on the record in this case, neither the ALJ, the district court, nor this court can decide what is best for Ms. Hutton. She became disabled on January 13,

-13-

1992, and continued in that status through the hearing.  It bothers me greatly that the ALJ was not more forthright in stating Dr. Brown's full findings.

## Work History

The ALJ stated:

> In assessing the claimant's credibility, her work record has been examined and the claimant has an extensive work record which appears to be of low earnings that varies significantly from year to year.  These variances and her low earnings tend to indicate the claimant's lack of motivation to return to work activity.

(Admin. Tr. at 383.)

To be charitable, this conclusion is not supported by the record.  Realistically, other conclusions must be drawn.  The plain, simple facts are that Hutton has a GED and no vocational or technical training beyond that level.  Nevertheless, she worked full time for the four years preceding becoming seriously ill from Hodgkins disease and earned the following sums:

| | |
|---|---|
| 1988 | $10,579 |
| 1989 | $14,641 |
| 1990 | $13,887 |
| 1991 | $15,298 |

This is hardly the picture of someone who lacks motivation to work, and is not at all bad for a woman with a GED in rural Arkansas with a young daughter at home .

## Summary

In my view, this court has no alternative but to reverse and remand to the district court with directions to remand to the Social Security Administration with directions to award benefits. The ALJ disregarded the law of this circuit in holding that Hutton's daily activities were indicative of her ability to hold down a full-time job in our competitive economy. The ALJ erred in posing an incomplete and misleading hypothetical to a vocational expert. The ALJ erred in rejecting the diagnoses of Hutton's treating physicians and further erred in holding that Dr. Brown believed that Hutton was able to perform full-time work as of December 15, 1995. Finally, the ALJ erred in holding that Hutton's work record prior to developing Hodgkins disease was less than exemplary.

Hutton is a relatively young woman who had a good work record prior to 1992. It may well be that if her physicians re-evaluated her and took the steps suggested by Dr. Brown, Hutton could return to work. That certainly should be the objective, and Hutton is obligated to follow the advice of her treating physicians. But as of now, Hutton is clearly and legally entitled to receive disability benefits as of the date of the onset of the disability and continuing for as long as she remains disabled.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.